STATE OF MISSOURI, Respondent, *vs.* J. S. ELKINS, Appellant.

1. *Criminal law—Venue, change of—Award of, notwithstanding petition.*—On an indictment for murder, pending in Barry county, in the twenty-first judicial circuit, the accused moved for a change of venue on the ground of prejudice in the judge, and asked in his petition that the case be removed to some other than the fourteenth judicial circuit, on the ground that a fair trial could not be obtained in the latter forum. *Held*, that the judge might, notwithstanding such request, send the cause to that circuit, and that the Webster court was thereupon possessed of full jurisdiction.

2. *Practice, criminal—Change of venue—Presence of accused.*—The presence of the accused is not essential in proceedings touching change of venue.

3. *Criminal law—Evidence of uncommunicated threats by the deceased, when admissible.*—As to when proof of uncommunicated threats by the deceased against one charged with his death are admissible, no general rule can be laid down. Each case must be determined by its own circumstances. The question depends very much on whether the declarations were uttered shortly before the homicide, and whether the deceased was the aggressor. If so, they are admissible. And in cases of doubt, for the purpose of throwing light on the action of the deceased and showing that he commenced the encounter, and with what motive, they are evidence.

4. *Criminal law—Homicide—Proof as to desperate and violent character of deceased, when and how far admissible.*—Where a homicide occurs under such circumstances that it is doubtful whether the act was committed maliciously or from well grounded apprehension of danger, testimony showing that the deceased was turbulent, violent and desperate, is proper. This proof extends to the general character and reputation of the deceased, but not to particular acts, or what, in the opinion of witnesses, he would be liable to do under particular circumstances.

5. *Criminal law—Evidence—Preliminary examination of witness, when proper, for purpose of impeaching him—Instruction commenting on evidence.*—Before a statement of the preliminary examination of a witness can be introduced for the purpose of impeaching his testimony, his attention should be called to it, and an opportunity of explanation afforded him. In such case, where the court instructed the jury that the statement being in writing was the best evidence, the instruction was held to be a comment on the weight of evidence, and improper.

6. *Evidence—"Falsus in uno, etc." not applicable to innocent mistakes.*—An instruction that, if they believe a witness to have sworn falsely, "or to have been mistaken," the jury are at liberty to disregard the whole or any part of his testimony, is improper. If the mistakes are innocent, and the testimony is not designedly and willfully false, the whole evidence should not be discredited.

*Appeal from Webster Circuit Court.*

*J. O'Day*, for Appellant.

Evidence of threats made by the deceased against the accused, although not proven to have been communicated to the prisoner before the killing, are admissible in all cases, where the acts of the deceased in reference to the fatal meeting are of a doubtful character, or where evidence has been given making it a question for the jury whether the killing was done in self-defense or not.    (People vs. Stokes, 53 N. Y. 175 ; Keener vs. State, 18 Ga. 194 ; Holler vs. State, 37 Ind. 57 ; Dukes vs. State, 11 Ind. 557 ; Campbell vs. People, 16 Ill. 17 ; People vs. Scroggins, 37 Cal. 677 ; People vs. Arnold, 18 Cal. 476 ; Lyon vs. Hancock, 35 Cal. 372 ; State vs. Monroe, 5 Ga. 85 ; Pritchett vs. State, 22 Ala. 39 ; State vs. Little, in Sup. Court of Tenn., April term, 1873 ; Jackson vs. State, do.; State vs. Wright, 9 Yerg. [Tenn.] 342 ; State vs. Nelson, 2 Swan, [Tenn.] 262 ; Carico vs. Comm. 7 Bush [Ky.], 124 ; State vs. Zellers, 2 Halst. [N. J.] 220 ; Murphy vs. Dart, 42 How. [Pr. R.] 31 ; State vs. Goodrich, 19 Vt. 116 ; Riddle vs. Brown, 20 Ala. 412 ; Pridgen vs. State, 31 Texas, 420 ;  Comm. vs. Young, 6 Bush [Ky.] 312 ; State vs. Keene, 50 Mo. 357 ; State vs. Sloan, 47 Mo. 604 ; State vs. Hicks, 27 Mo. 588 ; Payne vs. Comm., 1 Met. [Ky.] 370 ; Cases on self-defense [Harrigan and Thompson's] 29 Ala. 14, 416.)

The threats made by Hughes, but not communicated to defendant, were admissible for the purpose of showing the *animus* with which Hughes was actuated.

The evidence of the violent and dangerous character of Hughes was admissible, to corroborate evidence on part of the defense, that Hughes had made threats against defendant, and that Hughes was the assailant ; and for the purpose of proving that defendant had a reasonable ground to apprehend a design on the part of Hughes to kill or inflict great bodily harm on defendant, and that the danger was imminent that such design would be accomplished. Such evidence is held admissible where it qualifies, explains and gives meaning and point to the conduct of the deceased, or where a doubt is created as to whether the homicide was committed from malice or from principles of self-defense.    (Cotton vs. State, 31 Miss. 504 ; Westley vs. State, 37 Miss. 327 ; Rippy vs. State,

2 Head. [Tenn.] 217; Monroe vs. State, 5 Ga. 85; Comm. vs. Carico, 7 Bush [Ky.] 124; State vs. Williams, 3 Tenn. 376; State vs. Tackett, 1 Hawks [N. C.], 210; State vs. Bryant, 55 Mo. 75; State vs. Hickey, 27 Mo. 588; State vs. Keene, 50 Mo. 357; State vs. Harris, 57 Mo. 550; State vs. Tweedy, 11 Iowa, 350, 457, [see self-defense, Harrigan and Thompson, 596]; Pennsylvania vs. Robertson [Addison, p. 246], Monroe vs. State, 5 Ga. 85; People vs. Murray, 10 Cal. 309; Payne vs. Com., 1 Metc. 370; 29 Ala. 141; Pritchett vs. State, 22 Ala. 30; Hurd vs. People, 25 Mich. 405.)

The nineteenth instruction, given on the part of the prosecution, tells the jury, that if they believe any witness or witnesses were mistaken, the jury are at liberty to disregard the whole of such witness' or witnesses' testimony. It requires no citation of authorities to refute the legal proposition laid down in this instruction.

When the circuit court of Taney county awarded defendant a change of venue to the circuit court of Barry county, the record shows defendant did not appear in court in person. Defendant being indicted for a felony, no step could be taken in the case unless he was personally present in court; therefore the order, awarding the change of venue to Barry county, was null and void.

*J. A. Hockaday, Att'y Gen'l*, for Respondent.

I. The application for a change of venue was made during the existence of the Acts of March, 1873, which left the whole subject in the discretion of the circuit court. (Sess. Acts 1873, p. 56; State vs. O'Rourke, 55 Mo. 440; State vs. Sayers, 58 Mo. 585.)

II. It was not necessary for the prisoner to be present in court at the application for a change of venue. (Wagn. Stat., 1103, § 15.)

III. The court properly excluded evidence of threats made by deceased against the defendant before the killing, in the absence of proof that such threats were communicated to defendant. (Whart. Hom. § 695; Powell vs. State, 19 Ala. 577; Newcomb

11—VOL. LXIII.

vs. State, 37 Miss. 383 ; People vs. Henderson, 28 Cal. 465 ; 17 Cal. 316 ; 16 Ark. 568 ; 31 Tex. 420 ; State vs. Gregor, 21 La. An., 473 ; State vs. Jackson, 17 Mo. 544 ; State vs. Sloan, 47 Mo. 604 ; State vs. Keene, 50 Mo. 360 ; State vs. Harris, 59 Mo. 555 ; State vs. Hays, 23 Mo. 313.)

IV. The objection that the court refused to admit evidence of the dangerous character of deceased, as a violent and turbulent citizen, cannot avail, as the record shows that a large amount of this sort of evidence was introduced. The evidence on this point excluded was either as to particular acts or the mere opinion of the witness. (State vs. White, 35 Mo. 500.)

V. Instruction No. 14, given by the court, was proper. (See Whart. Hom., § 485, and authorities ; 5 Iowa, 433 ; 9 Iowa, 188 ; 4 Dev. & Bat. 491 ; Oliver vs. State, 17 Ala. 587 ; 4 Black. Com. 185 ; Selfridge's Case, Appendix Whart. Hom.)

WAGNER, Judge, delivered the opinion of the court.

The defendant was convicted of murder in the second degree, and has assigned for error in this court various rulings upon the trial in reference to the admission and rejection of testimony, and also in regard to the giving and refusing of instructions.

Before we proceed, however, to notice these points, a preliminary question is raised relating to the action of the court in determining defendant's application for a change of venue, which may be considered. The indictment was found in Taney county, and a change of venue was awarded to the defendant to the circuit court of Barry county, on the ground that the inhabitants of Taney county were so prejudiced against him that he could not have a fair trial in that county. When this petition was filed and the change of venue was ordered, it does not appear that the defendant was in court. Subsequently it is shown that the defendant appeared by attorney and presented his petition to the judge of the Barry county circuit court at Chambers, praying for a change of venue, because the judge was so prejudiced against him, that he could not have a fair and impartial trial. In this last petition it was averred that the judge of the fourteenth judicial circuit was so prejudiced against the defendant, that he could not

obtain before him a fair and impartial trial, and therefore the prayer was that the cause be sent to some other circuit than the fourteenth; but the judge awarded the change to Webster county in the fourteenth circuit. Before the case was called for trial in this last county, defendant filed his motion to remove the case to the circuit court of Barry county, or remove the same to some other court where no prejudice existed against him, which motion was by the court overruled.

No error is perceived in the action of the court in its decision upon this subject. It was discretionary with the judge of the Barry circuit court as to what circuit he would send the cause, and when it was duly awarded and transmitted to the Webster county circuit, full jurisdiction was obtained in this last circuit, and hence the court did right in refusing to remand the case or strike it from the docket.

But it is insisted that all the proceedings in regard to a change of venue were nullities, because the defendant appeared by attorney, and the record does not show that he was personally present when any of them were had. In answer to this it is sufficient to say that the personal presence of the accused is only required during the trial. The application for the change of venue was made and granted previous to the trial. It was a favor to him, constituted no step in the progress of the trial, and it was not necessary that he should be personally present.

On the trial defendant offered to prove that about ten days before the killing took place, and on that very day, and at other times within ten days, the deceased swore that he would kill the defendant—that defendant could not live in the country. The court refused to permit the defendant to prove these threats, because he could not prove that they were communicated to him previous to the killing.

When threats by the person killed should be admitted in evidence or rejected, is a question involved in a great deal of doubt and uncertainty. If they have been made a long time antecedent to the commission of the act, they may be not only valueless but entirely inadmissible. The relations of the parties may have since entirely changed, and in the intervening

time the person making them may have wholly aban-
doned any previously conceived intention of harming the
person against whom they were uttered. It is impossible to
lay down any general rule on the subject. Their relevancy, ad-
mission or rejection, depends materially upon the circumstances
surrounding each particular case. If the accused was the aggres-
sor, then evidence of threats by the deceased can be of no im-
portance in furnishing exculpatory evidence in his favor, for it is
only when an attempt is made to carry out or put in execution a
threat by the person making it that it becomes material and fur-
nishes grounds of justification for the action of the defendant.
If the threats are so recent as to afford a presumption that danger
may be apprehended, they are calculated to put the party against
whom they are made on his guard, and will frequently authorize
a line of conduct by him that would otherwise be unjustifiable.
In some instances uncommunicated threats are not only admis-
sible, but they become of the greatest importance in characteriz-
ing the offense. Where the deceased seeks the encounter and has
made threats, it is a reasonable inference to suppose that he in-
tended to execute those threats, and thus they would have a direct
tendency to characterize his conduct towards the prisoner at the
time of their meeting. In doubtful cases they may be admissible
as throwing light upon the action of the deceased at the time of
the affray or encounter, and have a direct bearing upon the rea-
sonableness of the grounds on which the defendant acted. In the
present case the defense introduced evidence tending to prove that
the deceased, some time prior to his death, called at defendant's
house when he was absent from home, and abused the female mem-
bers of his family, applying to them opprobrious and scurrilous
epithets, and stated that he intended to kill the defendant; that
when he was intoxicated he was a violent, desperate and danger-
ous man, and that on the day that he was killed he was under the
influence of liquor, and started on his way home, and that he de-
viated from his road in order to go by defendant's house; that
on approaching the house, and when close to it, he was violent in
his manner, using all kinds of threatening and abusive language,
and declaring his determination to kill the defendant, and that he

raised his hand towards his bosom as if he was going to get a pistol, when the defendant shot him. Now, the proof of the defendant's hostile temper, whether it consisted of preparations or declarations, was pertinent to show that the attack or a demonstration towards the attack, was first made by the deceased. Therefore, upon this principle, I think the evidence was admissible. In cases of doubt, for the purpose of showing that the deceased made the attack, and if so, with what motive, his prior declarations, uncommunicated to the defendant, are clearly evidence.

It was proved, without objection, that the deceased when intoxicated or under the influence of liquor, was quarrelsome, violent and dangerous. But the defendant sought to go further and show particular traits in the character of the deceased, and that if he made threats he would endeavor to carry them out.

This evidence the court refused to admit, and of the correctness of its ruling in this respect we entertain no doubt. Where a homicide occurs under such circumstances that it is doubtful whether the act was committed maliciously or from a well grounded apprehension of danger, testimony showing that the deceased was turbulent, violent and desperate, is proper, in order to determine whether the accused had reasonable cause to apprehend great personal injury to himself. This proof extends to the general character and reputation of the deceased, but it cannot be made to include particular acts, or what, in the opinion of witnesses, he would be liable to do under certain circumstances.

Again, the court permitted the State to give in evidence the written statements of a preliminary examination taken before a judge of the county court, when a portion of defendant's family were arrested as accessories to the murder. The statement or examination was produced and admitted for the purpose of impeaching the testimony of certain witnesses, who testified on the trial and who were also witnesses at the examination before the county court justice. This was objected to by the defendant. The paper was inadmissible for the purpose for which it was produced. That it might properly have been made evidence is unquestionable. But before it could be used to impeach the witnesses, a foundation should have been laid, which was not done.

The witnesses' attention should have been called to it, and they should have had an opportunity to explain it. And in this connection the court instructed the jury that, the statement being in writing, it was the best evidence. This was a comment on the weight of the evidence that the court should not have given. It was for the court to say whether or not it was competent, but when once admitted it was exclusively the province of the jury to give it whatever weight, effect and consideration they might think it deserved.

With the exception just adverted to, and one which will presently be noticed, the instructions were generally fair. Those given for the defendant were as favorable as he could ask. They asserted the doctrine of justifiable homicide and killing in self-defense in terms in which the defendant had no right to complain of. But the court gave one instruction for the prosecution which requires a more particular notice. It was that the jury were the sole judges of the credibility of the witnesses, and if they believed that any of the witnesses swore falsely or were mistaken, then they were at liberty to disregard the whole or any part of such witnesses' testimony. The doctrine has long been established that, where a witness willfully swears to a falsehood, his entire testimony may be disregarded. The court or jury are not bound to disregard it, but they may do so in their discretion. The rule is founded in the presumption that if the witness will intentionally swear falsely in one thing, he may do so in others, and therefore he may be unworthy of belief. But this was never applied to a mere case of mistake. We know of no principle of law which would warrant such an application. Men of the greatest uprightness and of the most unquestionable veracity are frequently mistaken, and yet no one would ever think of setting aside or disregarding their entire testimony on that account. In complicated cases witnesses will give different versions, and doubtless are often innocently mistaken; but no one would ever think of impeaching them for that reason, or suppose their testimony should or might be wholly set aside. In a case like the one we are now considering, where there are a great number of witnesses on each side, it is highly probable that some of them will be mistaken about cer-

tain facts ; but if the mistakes are innocent, and their testimony is not designedly and willfully false, their whole evidence should not be discredited. The instruction cannot be supported either upon authority or principle.

Wherefore the judgment must be reversed and the cause remanded. All the judges concur.