7 519|
31 480|

7 519|
33 81|

## ABE ROTHSCHILD *v.* THE STATE.

1. MURDER — VARIANCE. — Indictment for murder designated the deceased as "one certain white woman whose Christian and surname is to the grand jurors unknown, but whom the said grand jurors do name and call Bessie Rothschild, *alias* Bessie Moore, *alias* Diamond Bessie." The defence introduced the foreman of the grand jury to prove that prior to the homicide he saw a woman who he was told "was a fast woman called Diamond Bessie," and afterwards heard that she had been killed. *Held,* that this proof was properly excluded. It could not have sufficed to bring the case within the ruling in *Jorasco* v. *The State*, 6 Texas Ct. App. 238, that on the trial of such an indictment a fatal variance is apparent if the evidence shows that the name of the deceased was known to the grand jury.

2. CHANGE OF VENUE. — The original Code of Criminal Procedure prescribed the county whose court-house was nearest that of the county where the prosecution was commenced as the county to which on a change of the venue the cause should be transferred for trial, unless the defendant, in his application for the change, showed some valid objection thereto; and if such an objection was shown in the application, it became the duty of the court to inquire as to the other adjoining counties, permitting the defendant to show valid objections to any or all of them. Only one change of the venue was allowable on the application of the defendant, and the supporting affiants to the application were required to be citizens of the county in which the prosecution was instituted.

3. SAME. — By the act of 1876 the district judge, in any case of felony, was empowered of his own motion to change the venue to any county in his own or an adjoining district, stating in his order the reasons therefor. The exercise of this power was not ordinarily revisable on appeal, nor a refusal to exercise it assignable as error.

4. SAME — PRACTICE. — Application for a change of venue, and the hearing thereof, are proceedings preliminary to the trial, and not part of the trial itself. The presence of the defendant, therefore, is not necessary when the application is heard or determined. The better practice is, however, to have the defendant present whenever any proceeding, however trivial, is had in his case.

5. GRAND JURY — SECRECY OF DELIBERATION. — The Code stringently guards the grand jury from intrusion and undue influence, and to this end prohibits the presence of even the prosecuting attorney "when they are discussing the propriety of finding a bill of indictment, or voting upon the same;" and it expressly provides that the presence of any unauthorized person "when the grand jury were deliberating upon the accusation against the defendant, or were voting upon the same," is one of the two causes for which an indictment or information shall be set aside.

6. SAME — PRACTICE. — A motion to set aside an indictment for this cause is a written suggestion to the court, alleging the truth of the matter in sub-

stance. It need not be technical in form, nor be verified by oath; nor need its verity be established by the record, but may be shown by proof *dehors* the record. To overrule a motion of this character, when made in time, without affording the defendant an opportunity to establish his allegation by proof, is error.

7. PETIT JUROR — BIAS. — In testing a juror for bias, the inquiry relates exclusively to the present condition of his mind; and the modes whereby he formed a conclusion are material only as indications of the strength or weakness of his conclusion. The Code expressly recognizes hearsay as a basis on which a disqualifying conclusion may be formed; and, on the other hand, a mere impression, though derived from the evidence, does not disqualify a juror unless it would influence his finding. In determining whether the juror's opinion would influence his finding, the tenor of the whole investigation is to be considered, and not merely the juror's statement that it would not so influence him. See the opinion *in extenso* on this subject.

8. SAME. — A juror in a capital case, who before he heard the evidence had formed the opinion that the accused was guilty, and retained it on his *voir dire*, avowing his purpose to act upon it unless he heard something that would change it, was not an impartial juror, and was subject to challenge for bias. And when the accused had already exhausted his peremptory challenges it was error to overrule his challenge for such cause and to empanel the juror. Had the accused been able to dispose of the juror by peremptory challenge, the overruling of his challenge for cause would have presented a different question on appeal. Note in the opinion the statements of the juror on his *voir dire*, and the review of authorities on these questions.

APPEAL from the District Court of Harrison. Tried below before the Hon. A. J. BOOTY.

The indictment charged that the appellant, on January 21, 1877, in the county of Marion, did with a pistol and of express malice aforethought kill and murder a " certain white woman whose Christian and surname is to the grand jurors aforesaid unknown, but whom the grand jurors aforesaid do name and call Bessie Rothschild, *alias* Bessie Moore, *alias* Diamond Bessie." The venue was changed from Marion to Harrison County, where, in December, 1878, a trial was had, which consumed the better part of the month and resulted in a verdict of guilty of murder in the first degree, and judgment of death.

The record contains more than eight hundred pages, com-

prising the testimony of a multitude of witnesses, and nearly forty bills of exception. The opinion of this court sufficiently indicates those matters of fact which are pertinent to the rulings; and as there is no occasion to attempt a detail of the testimony, it suffices to refer to the report of the hearing on *habeas corpus*, in 2 Texas Ct. App. 560, where a condensed statement of the material evidence then adduced will be found. With the exception of Jennie Simpson for the prosecution and Belle Gouldy for the defence, the principal witnesses who then testified were examined at the trial from which this appeal was taken. Many others, however, were introduced, but their evidence imparts no new feature to the case.

A very forcible and learned brief and argument was filed in this court by the counsel for the appellant; but its length necessarily precludes its insertion.

*Culberson, Armistead, Mabry, McKay & Culberson, Turner & Lipscomb,* and *Crawford & Crawford,* for the appellant.     .

*Thomas Ball,* Assistant Attorney-General, for the State. 1. This transcript presents at the threshold appellant's motion to set aside the indictment, which motion was overruled and a bill of exceptions saved. It was made under art. 523, Revised Code of Criminal Procedure, and it is presumed was intended to comply with said article. It could only be sustained where and when the record shows a fact necessary to set aside the indictment. The words " that it appears by the records " are intended to go to each cause assigned in art. 523 for setting aside an indictment. See *Coats* v. *The People,* 22 N. Y. 245; *The State* v. *Oxford,* 30 Texas, 428.

Again: if the words above copied in quotation marks do not go to and include the entire article, then the motion to set aside was properly overruled; because its object was to

introduce proof *dehors* the record, for the purpose of falsifying or contradicting the record, which cannot be done. *Vestal* v. *The State*, 3 Texas Ct. App. 648.

If the matter set up in the motion was not apparent of record, then the motion should have been sworn to. · Code Cr. Proc., art. 525. But it may be said that this motion is not included in the special pleas referred to by art. 525. If this be true, then the motion was and is nothing less than a plea in abatement, and must be sworn to unless the matters complained of appear of record. Code Cr. Proc., art. 27 ; Whart. Crim. Law, sect. 536. If the plea had been sworn to, and was regular in other respects as to matters of record, then it was and is bad for duplicity in that it sets up two distinct and separate grounds in abatement. *The State* v. *Hesselton*, 67 Me. 598 ; *Finley* v. *The People*, 1 Mich. 234 ; *The State* v. *Ward*, 63 Me. 225.

It may be said that under the statute one or more causes may be embraced in one plea. This may apparently seem so, but such is not the practice ; as two or more pleas in abatement can be made to the same indictment, each plea embracing but one distinct cause. *The Commonwealth* v. *Long*, 2 Va. Cas. 318.

Again : the record neither shows that less than nine members of the grand jury found the indictment, nor that a person not authorized by law was present with the grand jury while they were deliberating on the bill ; and it would not have benefited the defendant if the plea had not been overruled.

Again : this being a plea in abatement, it must have been filed prior to any other motion or plea (Code Cr. Proc., art. 522), which was not done in this case, and for that reason it was correctly overruled.

Again : in regard to the refusal of the court to permit the defendant to amend this plea, it is not shown in what manner and which part of the plea was desired to be amended ; and if the plea was entitled to be regarded as a

sworn plea, then the refusal to permit defendant to amend was right. *Sydnor* v. *Chambers*, Dallam, 601.

2. Defendant's motion to disclose names of private prosecutors was properly overruled.

A private prosecutor is one who prefers an accusation against a party whom he suspects to be guilty of some offence. No other is in law termed a private prosecutor except one who voluntarily has the charge preferred; and such is not pretended to be the case here. See "Prosecutors," 2 Bouv. L. Dic., and the authorities there cited.

3. Defendant's fifth application for a continuance was properly overruled. It neither shows diligence, materiality of testimony, nor probability of ever getting either. As to the witness Belle Gouldy, her residence or whereabouts was unknown; and if her testimony was material, it is apparent from the application for continuance that a sufficient predicate could have been laid to have used her testimony taken on *habeas corpus*. *Sullivan* v. *The State*, 6 Texas Ct. App. 319.

The witnesses Maria McCleaver and Katie Williams seem to have been attached, but the date of attaching does not appear, and no bonds were taken for their attendance on court.

The other witnesses appear to have been wanted only to establish immaterial matters. The court committed no error in refusing the motion, even if it were a second application as claimed by appellant. *Townsend* v. *The State*, 41 Texas, 134; *Cantu* v. *The State*, 1 Texas Ct. App. 402; *Richardson* v. *The State*, 2 Texas Ct. App. 322; *Coward* v. *The State*, 6 Texas Ct. App. 59; *Handline* v. *The State*, 6 Texas Ct. App. 347; *Sealy* v. *The State*, 1 Kelly, 213; *Robles* v. *The State*, 5 Texas Ct. App. 346.

4. The court did not err in refusing to allow the defendant to challenge the jurors Saunders, Sherod, and others for cause. The jurors show by their statements that the ideas or opinions they had of the case were not founded on hear-

ing any of the evidence, but simply on rumors and news-paper reports. An opinion predicated on these will not disqualify persons from serving as jurors. *Grissom* v. *The State*, 4 Texas Ct. App. 374; *Epps's Case*, 5 Gratt. 676; *The People* v. *Brotherton*, 47 Cal. 388; *The People* v. *Vasques*, 49 Cal. 560; *Sharp* v. *The State*, 6 Texas Ct. App. 650; *Reynolds* v. *United States*, 8 Otto, 145.

5. Defendant took a bill of exceptions to the ruling of the court in refusing to permit the witness Ellis to answer questions concerning the reputation of deceased around Jefferson in regard to her name as known in the community. While this proof would have been proper and legal in ordinary cases, yet in this case the whole evidence shows that deceased was a stranger, in fact a transient traveller, stopping at the hotel only a few days at most before she was killed. As she did not live in the neighborhood, she had no reputation known to any one there; and her reputation in a strange land amounted to nothing and would not be made a subject of inquiry there. Especially was this true when no sufficient predicate had been laid as to the acquaintance of the witness with the reputation of deceased's name.

The same rule should prevail in this as in the manner of destroying the credit of a witness by proof of his bad reputation for truth amongst his neighbors. The proof of the reputation of a person for any purpose, or the proof of the reputation of the name by which a person is known, must of necessity rest on and be determined by the same rule of evidence. Apply the rule laid down in regard to proof of reputation for truth, in this case, and the evidence was clearly inadmissible. 1 Greenl. on Ev., sect. 461; *Boon* v. *Wethered*, 23 Texas, 675.

6. The indictment was found in Marion County. In the spring of 1878 defendant made a motion for change of venue. The motion was granted, and the case sent to Harrison County, because the court-house of the latter county

was nearest to the court-house of the former.  Code Cr. Proc., art. 581.  When this order was made, there was nothing before the court to show that any prejudice existed against defendant in Harrison County except the joint affidavit of two persons.  The defendant did not make or pretend to make any showing in his application for change of venue that he had any objection to his case going to Harrison County.  His own affidavit should have been first made as a basis on which to prove by others the existence of prejudice in Harrison County; and until he did make such an affidavit he could not show its existence by others.  Code Cr. Proc., arts. 578, 581, 582.

In so far as the action of the court is complained of in making the change of venue, that is a question to be determined by the court in the exercise of a sound discretion; and unless it is manifest that a wrong was committed towards the defendant, this action should not be reviewed. *Brown* v. *The State*, 6 Texas Ct. App. 286; *McCarty* v. *The State*, 4 Texas Ct. App. 461; Code Cr. Proc., art. 581.

7. After the case was transferred to Harrison County, defendant pleaded to the jurisdiction of the court to try his cause, which could not be done after defendant had entered his plea of not guilty.  The plea to the jurisdiction was overruled, and a bill of exceptions saved.  At the time this plea was made, the law recognized such a plea in criminal cases.  Pasc. Dig., arts. 2951, 2953.  Compare this last article with art. 525, Code Criminal Procedure, and it appears that there is no such plea known to the law now.  The plea being abolished by statute, it makes no difference now whether the court acted right or wrong in overruling the plea to the jurisdiction, because the defendant cannot avail himself of that plea if the cause were reversed.  He would be, in the court of Harrison County, powerless to remove his cause, as it does not seem the law contemplates but one change of venue to defendant.  Rev. Stats. 718, sect. 5; Code Cr. Proc., art. 581.  But the action of the court is

not asked to be sustained solely on the change in the law. That Harrison County was the place to send the case to, see Code Cr. Proc., art. 581.

The bill of exceptions does not show that defendant was not in court when the order changing the venue was made. The order was the result of his own motion, and in accordance with his request, and he has nothing to complain of whether he was there or not; and it was too late to raise the question of defendant's absence for the first time in Harrison County. *Garcia* v. *The State*, 5 Texas Ct. App. 237. Again: the action of the District Court of Marion County could not be attacked in this way for the first time by a plea to the jurisdiction of the District Court of Harrison County. *Harrison* v. *The State*, 3 Texas Ct. App. 558.

8. As to the allegation in indictment of the unknown person killed called by the name of Diamond Bessie, etc., it is apparent from the evidence that her name was not only unknown to the grand jury, but to the whole community, as a fact; and the rule laid down by this court will not apply in the case at bar. *Jorasco* v. *The State*, 6 Texas Ct. App. 243.

9. The bill of exceptions in regard to the bringing of the trunk in court does not show that any error was committed. *Handline* v. *The State*, 6 Texas Ct. App. 347; *Walker* v. *The State*, *ante*, p. 245.

10. The motion for change of venue made in the District Court of Harrison County was properly denied. It is to be remembered that the change of venue from Marion to Harrison County was made on the motion of defendant. Before defendant could change the venue, the law required him to enter a plea of not guilty. Code Cr. Proc., art. 580. This was intended for a wise purpose; and it is submitted to the court as a proposition of law (heretofore undetermined so far as ascertained), that when defendant changed the venue, on complying with the stern requisite

of the law by the plea of "*not guilty*," he accepted the change of venue under all the restrictions of practice and pleading after having pleaded to the indictment.

The law recognizes but one plea for the defendant after having pleaded to the indictment (besides a few special pleas which are permitted to be made as assistants to the plea of not guilty), and that sole plea is an application for a *continuance after the trial has begun, when some unexpected occurrence may happen.* See Code Cr. Proc., art. 568. This article, and art. 25, Code Criminal Procedure, settle beyond question that the trial as understood and fixed by the law of Texas is from the time of the entry of the plea of not guilty to the return of the verdict by the jury, and perhaps the judgment pronounced thereon. Thus having ascertained and determined by statute *when the trial begins and ends,* no decisions of courts outside of Texas can control or interfere with the rule prescribed. See arts. 1 and 27, Code Cr. Proc. Art. 522, Code Criminal Procedure, says the plea of not guilty is the last plea; and when that is made, issue is joined, and all other pleas except the one provided in art. 568, Code Criminal Procedure, are excluded from the defendant. Now apply the rule of law made by statute to the case at bar, and all pleas made by defendant (after the plea of not guilty was entered in the District Court of Marion County on the change of venue being granted) were made (including his application for continuance, for it does not comply with art. 568, Code Criminal Procedure) without authority of law, and were properly and rightly overruled.

Again: it is to be noticed in connection with change of venue, that when the change is made otherwise than on the application of defendant the law does not require defendant to enter the plea of "*not guilty*" (see Acts 1876, p. 274; Code Cr. Proc., arts. 576, 577); thus holding open to defendant the right to make and enter any and all pleas he would have been entitled to had the venue not been

changed. But, on the other hand, when the venue is changed on the defendant's motion (as was done in the case at bar), the law compels him to enter the plea of not guilty. Then the trial in fact begins; he cannot then be heard to complain of any matters which are the result of, his motion.

To permit a defendant to change the venue and begin his trial by pleading not guilty, only, because he cannot obtain an impartial jury at the venue where the plea is entered, to plead *de novo* would be to enable him to use the humane right accorded him (to try in another county) to complicate the effort to enforce remedial justice, and to avail himself of a privilege which he would not have been entitled to after plea of "not guilty" had the venue not been changed. Code Cr. Proc., arts. 522, 568, 580. That the foregoing tenth paragraph contains the true definition of the beginning and ending of the actual trial, and of the plea a defendant is entitled to after a trial begins, there can be no question. But suppose, as stated by counsel for appellant, that the trial of a criminal cause begins with the "inception of the indictment, and concludes with the disposition of the cause on appeal (if it is appealed), and that a defendant has to be present at every stage of the trial," then it is submitted as a clear conclusion of law, applying the rule laid down in art. 568, Code Criminal Procedure, to appellant's definition of the beginning and ending of a trial, that the only plea a defendant is entitled to after the indictment is found is the application for a continuance, for unexpected happenings, etc. This broad definition of the beginning and ending of the trial would sweep from a defendant every plea except the application for a continuance ; which was never contemplated by law. Again : this court, according to appellant's view of the personal presence of defendant at every stage of the trial, could not pass upon the case at bar without defendant's presence.

This view is presented to show the fallacy of appellant's

legal position.    If the court shall conclude that the trial
begins as stated by counsel for appellant, then it is sub-
mitted that all of his pleas were properly overruled, and he
has nothing to complain of.    But if the court shall con-
clude that the trial begins when the plea of "not guilty"
is entered and issue is joined on the change of venue being
granted, then it is insisted that every plea of defendant
made in the District Court of Harrison County was properly
overruled, and the action of the District Court of Harrison
County should be sustained.

CLARK, J.    An elaborate review of the authorities as to
the question of variance between the allegation and proof
as respects the name of the deceased is not deemed essen-
tial to a proper determination of that question.    In the well-
considered case of *Jorasco* v. *The State*, many of these
authorities are collated, and the principle deduced that
where the name of a third person is necessary to be stated
in an indictment, and upon the trial it is apparent that such
name was known, and could have been ascertained by the
grand jury without any difficulty, the action of the grand
jury in alleging that the name of the person was unknown
cannot be overlooked as immaterial, but the variance will
be fatal to the conviction.    6 Texas Ct. App. 238.

For the purposes of this case it will suffice to say it is
apparent from the record that the name of the murdered
woman was not known to the grand jury who presented the
bill, nor could it have been ascertained by the exercise of
any reasonable diligence.    Apart from the fact that she was
a transient stranger in the country, having only arrived a
few days before the murder, and seems to have been known
to no one except by mere rumor, by which she was styled
with various *aliases*, she evidently belonged to an unfortunate
class whose names are as fleeting as the shadows upon the
wall, and who exchange one name for another with the
same facility that they traverse the country from town to

town. Under these circumstances, no principle of criminal pleading demanded that her name be stated in the indictment with fixed certainty, because that name could not have been ascertained with certainty, and the grand jury could well style her, as they did, an unknown white woman whose Christian and surname was to them unknown.

And with equal propriety could they, in addition, endow her with the various appellations rumor had assigned to her in life and after death. Such latitude of pleading is based upon necessity, and so long as that exists the rule applies. Says Bishop : " Necessity is a master before whom all things bow. No one is blamable for yielding to the inevitable ; therefore nothing which is compelled by necessity is in law a crime. The rule of reason which exculpates offenders when what was done was compelled by necessity, excuses the pleader when alleging against a wrong-doer the particulars of a criminal charge. He is not required to be more specific than the circumstances will permit." 1 Bishop's Cr. Proc., sects. 319, 493, 495. The court did not err in sustaining objections to the testimony of the witness Ellis, the foreman of the grand jury, as to his knowledge of the woman's name ; and his answers, if elicited, could have no effect upon the result of the trial, either in the court below or in this court.

Upon an application by a defendant for a change of venue upon either of the grounds specified in the statute, if he desires that the case shall be transferred to some county other than that whose county-seat is nearest the county-seat of the county in which the prosecution is instituted his application must embody some valid objection to such nearest county, else he cannot complain if the court in the exercise of its discretion follows the law and sends the case to that county which the law designates. Such is the express import of the statute, and such the decision of this court. Pasc. Dig., art. 2998 ; *Harrison* v. *The State*, 3 Texas Ct. App. 558.

The proper construction of the original statutes in the Code, relating to the county to which the case should be transferred, seems to be this: The change must be made to the nearest county if no valid objection to that county be shown. Such valid objection can only be shown by the defendant after proper allegation in his application, supported by proof. If upon such allegation and proof the court is satisfied that the nearest county is subject to some objection, then it is his duty to inquire as to the other adjoining counties; upon which inquiry the law seems to dispense with formalities, and permits a defendant to show to the court in any proper and legal manner the existence of some valid objection to all the counties adjoining that in which the prosecution is pending. The opposite construction, contended for by counsel, to wit, that objections to the nearest county may be shown upon the hearing whether set out in the application or not, would nullify a plain and positive provision of the first statute (art. 2998), which is always to be avoided in statutory construction, while the construction here given preserves both statutes in their entirety and gives full effect to a plainly deducible legislative intent. Pasc. Dig., arts. 2998, 2999.

Under the act of 1876 (Laws 1876, chap. 156) it was competent for the court below, of its own motion and without any showing by the defendant, in the application or otherwise, to have ordered a change of venue to any county; and such is the effect of the decision in *Preston's Case*, 4 Texas Ct. App. 186. Had the court in the case at bar seen proper, from the evidence furnished him or from his own knowledge, to have transferred the case to some county other than that whose court-house was nearest, its action would not be reviewed by this court, at least in the absence of a manifest showing that by such action the rights of the defendant were materially prejudiced. And it is equally palpable that the refusal to exercise this discretion cannot be made the subject of valid complaint here

on the part of this defendant. If a valid objection to Harrison County really existed, the law afforded him a plain and adequate remedy, which he failed to invoke in the mode pointed out; and he cannot be heard to complain because the court refused to aid him with its discretion, and refused to consider testimony in the absence of a compliance by himself with the only law which authorized its consideration.

While a change of venue is authorized by the Constitution, yet it is subject to such regulations as the Legislature may prescribe; and regulations which are reasonable and which do not tend to entirely defeat the right are as obligatory upon courts as the provision of the Constitution itself. The right is exceptional in its nature, and those who would avail themselves of it must bring themselves clearly within the regulations; and the application is to be construed most strongly against the defendant, upon the familiar principle that it is to be supposed he states the facts most strongly in his favor.

Upon a removal of the cause to Harrison County the defendant filed pleas to the jurisdiction of the District Court of that county, based substantially upon the fact that at the time the order for a change of venue was formally entered in the District Court of Marion County the defendant was not present in court but was then in confinement in the county jail. From the bill of exceptions it appears that the application for a change of venue was heard and considered on the eleventh day of May, and the court then and there awarded the change of venue, but reserved its decision as to what county the case should be sent. There seems to have been some sort of agreement, presumably oral, between counsel for the State and for the defendant that the case should be sent to the county of Cass; but on the fifteenth day of May counsel for the State withdrew their assent to such agreement, and the court thereupon entered an order transferring the case to Harrison County, which was the nearest county.

When these proceedings were had the defendant was not present, but was represented by counsel, who saved a bill of exceptions to the order ; but not on the ground that the defendant was not present.   The defendant was present during the hearing of the application.   It is now contended that these proceedings had on the 15th of May constituted a part of the "trial" of the cause, and that under the Constitution and the laws the defendant was not only entitled to be present, but that his presence was absolutely indispensable to the jurisdiction of the court.   And we are referred to a number of authorities which announce the principle embodied in our statute, that "in all prosecutions for felonies the defendant must be personally present on the trial."   Pasc. Dig., art. 3008.

We do not regard the proceedings on an application for a change of venue as any part of the trial, and in support of this position need not invoke any other authority than our own Code of Criminal Procedure, the wisdom and comprehensive character of which stands a fitting monument of the greatness of its original author.   By reference to chap. 4 of Title IV. we find its style to be "Of proceedings preliminary to trial ; " and when we examine the various provisions of that chapter we find that they relate to enforcing the attendance of the defendant and of witnesses, the service of a copy of the indictment, the arraignment of the defendant, the pleadings of the parties, their argument and decision, continuances, change of venue, and dismissals.   Pasc. Dig., arts. 2874, 3006.   It may well be assumed, therefore, that applications for change of venue, and the hearing thereof, constitute one of the proceedings preliminary to the trial, and not a part of the trial itself ; and that the trial designated in art. 3008, above quoted, means a trial upon the merits, and not any or all of the various stages by which a case is prepared for final hearing and determination.

The provisions regulating trials are found in a subsequent title, which opens with an article prescribing the only mode

of trial upon issues of fact in the District Court.    Pasc.
Dig., art. 3007.    By an application for a change of venue
the object and purpose of the defendant is to avoid a trial,
and to cause the case to be transferred to another county
where a trial may be had.    He is required to state, and such
is the statement of the defendant in this case, that for cer-
tain reasons he cannot obtain a fair and impartial trial in
the county where the prosecution is commenced; and it
would be manifestly against common sense to hold that his
attempt to avoid a trial in the county was in law a part and
parcel of his actual trial, even though the attempt was suc-
cessful, as in this case.    As said by the court in Missouri in
a late case, "The application for a change of venue was
made and granted previous to the trial.    It was a favor to
him, constituted no step in the progress of the trial, and it
was not necessary that he should be personally present."
*The State* v. *Elkins*, 63 Mo. 159.

It would have been proper in the court in this instance to
have caused the prisoner to be brought into court before
making its final order, and doubtless it would have been
done had the counsel of the defendant, who was present,
suggested it; and the better practice is to have the defend-
ant present in all proceedings before trial, no matter how
trivial or unimportant such proceedings may seem to be.
While his presence may not be indispensable under the law,
it may often be of advantage to a defendant to be in a posi-
tion to readily consult his counsel, and to assist them with
his suggestions in any emergency that may arise.

There was no error in overruling defendant's pleas to
the jurisdiction of the District Court of Harrison County,
for the reasons above indicated and for the additional rea-
son that error in changing the venue cannot be availed of by
such plea in the new tribunal.    *Brown* v. *The State*, 6
Texas Ct. App. 286; *Harrison* v. *The State*, 3 Texas Ct.
App. 558; *Wheeler* v. *The State*, 42 Ga. 306.

Nor did the court err in refusing to change the venue

from Harrison County upon application of the defendant. The evidence adduced upon the hearing of this application showed that the supporting affiants were obscure persons, who from their associations and avocations were not likely to be at all familiar with the state of public sentiment in the county, and their answers on the witness-stand manifested such recklessness that the court was well authorized to believe that their affidavit was induced by something else than actual knowledge and a conscientious disposition to preserve the purity of jury-trials. When this is apparent, it is immaterial how many witnesses may testify to the existence of the prejudice, or how many to its non-existence. *Winkfield* v. *The State*, 41 Texas, 148 ; *Walker* v. *The State*, 42 Texas, 360 ; *Buie* v. *The State*, 1 Texas Ct. App. 452 ; *Dupree* v. *The State*, 2 Texas Ct. App. 613 ; *Dixon* v. *The State*, 2 Texas Ct. App. 530 ; *Houillion* v. *The State*, 3 Texas Ct. App. 537 ; *Johnson* v. *The State*, 4 Texas Ct. App. 268 ; *McCarty* v. *The State*, 4 Texas Ct. App. 461 ; *Labbaite* v. *The State*, 6 Texas Ct. App. 257.

But a more serious objection to granting this application for a change of venue presents itself in our statutes regulating this procedure. These provide that a change may be granted on the written application of the defendant, " supported by his own affidavit and the affidavit of at least two credible persons *residents of the county where the prosecution is instituted,*" for certain causes, the first of which is " that there exists in the county where the prosecution is *commenced* so great a prejudice against him that he cannot obtain a fair and impartial trial." Pasc. Dig., art. 2994. Evidently the law contemplates that a defendant shall be entitled to but one change under this statute, for it makes no provision for a second. The application must be supported by the affidavit of persons resident in the county where the prosecution is instituted, and the prejudice must exist in the county where the prosecution is commenced,

and not in the county where it may be pending after change of venue. To hold otherwise would require upon the part of courts the substitution of the word "pending" for the terms "instituted" and "commenced," in the statute, which would be tantamount to judicial legislation. Courts must assume that the law-making powers understand the import and effect of the language they employ, and cannot construe that which from its simplicity needs no construction.

If a second application is authorized, after the venue has once been changed, it must be supported by the affidavits of credible persons resident in the original county, which might be distant many miles from the county where the prosecution is pending, and with the public sentiment of which the affiants could not in reason have any acquaintance. In a recent case in Indiana this question arose upon a second application for a change of venue on account of the prejudice of the presiding judge, one application having already been granted on that ground; and in deciding adversely to the application the court employ this language: "The affidavit, we think, fulfils the requisites of the statute; but the question arises, Is the appellant entitled to two changes of venue in the same case, for the same cause? We think not. The statute nowhere authorizes a second change of venue to the same party for the same cause. The court had no more power to grant a second change than it would have to grant a third, fourth, or fifth, or any number of changes. The ends of justice demand this construction of the statute; otherwise it would be in the power of a defendant charged with a criminal offence to defeat a trial entirely." *Line* v. *The State*, 51 Ind. 172.

In this case the application did not conform to the statute in that it was not supported by the affidavit of credible persons resident in the county where the prosecution was instituted. And while, in the exercise of an

enlarged discretion vested in him by sect. 1 of the act of August 21, 1876 (Laws 1876, p. 274), the district judge may of his own motion award a second change of venue, and might have done so in this case upon the appeal and prayer of the defendant, yet the provisions of this statute cannot be invoked to cure the supposed defects in other statutes upon which the application of the defendant was based, and by which alone its sufficiency must be tested. This provision in the statute of 1876 was enacted in the interests of public policy and public justice; and if a power of review is lodged with this court in case of its exercise, or failure to exercise it, this case does not call for such review.

The secrecy of the grand-jury room, and the purity and impartiality of that inquest, have ever been matters of watchful solicitude on the part of the law. Upon it depends in a great measure the safety and stability of society, and under the law no undue influence is permitted to sway its counsels or to influence its actions. While at common law it may not have been unusual to permit even the prosecuting attorney to be present during the time it was deliberating upon or finding a bill (Chitty on Bills, 317; 1 Bishop's Cr. Proc., sect. 862, note), yet under our Code this is strictly prohibited. In prescribing the duties, privileges, and powers of that body, almost the first mandate of the law is that "the deliberations of the grand jury shall be secret." Pasc. Dig., art. 2840. It further prescribes that "the district attorney may go before the grand jury at any time, except when they are discussing the propriety of finding a bill of indictment or voting upon the same." Pasc. Dig., art. 2841. And in further manifestation of the purpose of the law-making power, demonstrating that its command was something more than an idle direction or regulation, it is prescribed as one of the grounds for setting aside an indictment and holding it for naught, "that some person, not authorized by law, was present when the grand jury

were deliberating upon the accusation against the defendant or were voting upon the same." Pasc. Dig., art. 2950.

It is needless to inquire why this particularity. Suffice it to say, it is the law, and manifestly enacted for wise purposes. By its due observance every person when arraigned before our courts upon presentment will have reason to feel and believe that he has not been presented through envy, hatred, or malice, nor that improper influences have penetrated that body which the law preserves as sacred, and wrung from it an accusation which otherwise would never have encumbered a docket.

Within the time prescribed by law the defendant, among other pleadings, filed his motion to set aside the indictment, one of the grounds of which was that one Edward Guthridge, a person not authorized by law, was present when the grand jury were deliberating upon the accusation and while they were voting upon the bill; and he then and there offered to prove in open court and before the court that said averment was true; but upon objection by counsel for the State the court refused to hear testimony, on the ground that the motion was insufficient in law; whereupon the defendant's counsel asked leave to amend the motion, which was refused, and the court thereupon overruled the motion. This, in brief, is the history of the proceeding as it appears in a bill of exceptions taken and filed at the time.

The particular objection by the State is not shown, nor does the record enlighten us as to why the motion was insufficient in law. On the face of the pleading it appears good on general demurrer at least. No strictness or technicality of pleading is essential in such cases, the motion being merely a suggestion to the court in writing, embodying substantially one or both of the grounds prescribed in the statute. The law does not require that it be sworn to; nor is it necessary to allege that it appears from the records of the court that some one not authorized by law was

present when the grand jury were deliberating upon the accusation or voting upon the same, for such a fact, if it exists, never appears of record, and cannot be made to appear. Unlike the first ground contained in the statute, it can only be made to appear by proof *dehors* the record. While not a perfect pleading, it presented matter sufficient to require the court to hear the proffered evidence if in fact it existed, and to set aside the indictment promptly if the truth of the averment was established. Now as a matter of judicial knowledge this court may know that one Edward Guthridge was the county attorney of Marion County at the time this indictment was preferred, and the record also informs us of that fact; but even if the party referred to was this officer, his presence with the grand jury at the times alleged would vitiate the indictment, as well as that of any other unauthorized person. The State should have taken issue as to the facts set up in the motion, and had the issue speedily determined by the judge. Pasc. Dig., art. 2971. It may be there was no truth in the allegation. If so, that was the time and place to determine it.

The law gave to the prisoner the right, upon a proper allegation, to have the matter inquired into, and this right he was deprived of by the action of the court. The State was demanding his life, and in such a case no right, however unimportant, is to be denied him. In the language of Judge Wheeler, "When the State demands the extreme rigor of the law, the *summum jus*, it must be in subordination to every legal form and requisite. All the prescribed forms of law, however apparently unimportant in themselves, must be observed. The right to exact the ultimate penalty must appear clear and perfect, in every particular, in form and in fact." *Burrell* v. *The State*, 16 Texas, 149.

To a similar effect is the language of the court in *Calvin* v. *The State:* "The law of the case as it is developed to us by the record is precisely the same as if the accused

were a free white man, and we cannot strain the law even 'in the estimation of a hair' because the defendant is a slave, or because of any unusual features which the case presents. In all civilized countries the law has always shown the most tender regard for human life, and judicial tribunals, in the administration of the criminal law, have always deemed it proper to adhere with great strictness to established rules wherever life or liberty is concerned. If courts could feel themselves at liberty to depart from principles and established rules in order to hasten the punishment of even great offenders, such departures might even result in the destruction of those safeguards which, in accordance with the genius of free governments, have been provided for the lives and the liberty of men." 25 Texas, 796.

Courts cannot be too careful, especially in trials of the graver felonies, in awarding to defendants the full measure of their rights under the law, and in restricting the prosecution within the limitations enjoined by law. The State in her wisdom and humanity has placed guarded restrictions around the trials of her citizens, and has guaranteed to them the enjoyment of certain rights and privileges, even though they stand under grave accusations for a violation of her laws. And when she comes into her own courts, in the person of her law-officer, and demands the forfeiture of the life or the liberty of the citizen, she is entitled to no more favor or consideration than the humblest citizen in the land. Such is her own law, and she would not change it if she could.

Another error assigned relates to the empanelling of the jury and the disqualification of certain jurors, some of whom were challenged peremptorily by the defendant after challenges for cause had been overruled, and one of whom sat in judgment upon him, his challenges being exhausted. This juror, William Sanders, on his *voir dire* appeared to be qualified, and was accepted by the State. Upon examination by the defendant, he stated that he had heard the case

talked about a good deal; had formed an opinion as to the guilt or innocence of the defendant from what he had heard, and that opinion was that he was guilty. He had not only formed the opinion, but had expressed it frequently, having heard the case talked about a good deal. This opinion was formed the first time he had heard the circumstances, and had continued until the present time, and was now his opinion. It was based upon what he had heard from outsiders, and he had never heard any particulars, or read any evidence in the case; but he believed what he heard to be true, and still believed it. He would not take this opinion in the jury-box if selected as a juror, but would throw it aside and go by the evidence, as he could lay aside his opinions at will. The defendant then challenged for cause; and thereupon, over his objection, the State reëxamined the juror, who in response to such examination stated that he did not have a well-established opinion in his mind now, as to the guilt of the defendant, which would influence his verdict; and in response to further inquiry by the court, the juror stated that he had never heard the evidence or talked with the witnesses, but had heard about the case a good many times, first from one man and then from another, and could go into the jury-box and be entirely uninfluenced by any opinion he then entertained. The court thereupon overruled the defendant's challenge for cause; and then with leave of the court the defendant further examined the juror as follows : —

"*Q*. Would we have to introduce evidence to change your opinion, or would you still entertain that opinion and act on it?

"*A*. If the evidence comes in same as I have heard, of course I would believe it.

"*Q*. What I want to know is this : you say you have an opinion, — would you change that opinion if we were to introduce some testimony to show the man was not guilty?

"*A*. Yes, sir; I suppose so.

"*Q.* If we did not do that, your opinion is formed conclusively?

"*A.* If the evidence is the same as I have heard it.

"*Q.* Then you have made that opinion an established opinion, granting the evidence is the same as that upon which your conclusion is formed?

"*A.* Yes, sir.

"*Q.* If it is not, you will change your opinion?

"*A.* Yes, sir.

"*Q.* Unless you hear something else, you will maintain the opinion you have?

"*A.* Yes, sir."

After which the juror stated, in reply to a question from the court, that if what he had heard was true, then he had an opinion; but if it was not true, he should not go by it. And thereupon the court again overruled the challenge for cause, and the defendant challenged peremptorily; but, having exhausted his peremptory challenges, the juror was sworn, and took his seat upon the jury. It may be added that the defendant was forced to resort to his peremptory challenges in the case of several other jurors whose answers had developed a state of opinion equally as positive as that of this juror.

It would be a useless and almost interminable task to explore the various decisions of the several States for the purpose of reconciling them and deducing therefrom a uniform rule as to the competency of a juror in a criminal case. The decisions of scarcely any one State are reconcilable with each other, and the mind would be lost in bewilderment at the threshold of the attempt. Evidently in the adjudication of particular cases the courts have not been guided by any fixed principle, and, as a consequence, our jurisprudence in this respect has long since been launched upon a sea of chaos. This is scarcely to be wondered at when it is remembered that, apart from the contrariety of statutes, the subject involves the condition of

the human mind, with all its frailties and infirmities, and that investigations must necessarily proceed without the aid of satisfactory evidence in most instances, and determinations must oftentimes rest upon conjecture or remote and unsatisfactory inference. Some cases hold that the opinion of the juror must be positive; others that it must be decisive and substantial; others, fixed and not hypothetical; others, deliberate and settled; and others that it must be based upon testimony and not mere rumor.

Our own court has been seldom called upon to adjudicate the question, and no decision covering this particular case has been found in our reports. In the case of *Burrell* v. *The State*, 18 Texas, 713, the juror appeared to have had an impression, but not an opinion, from having talked with a witness; but the decision rested upon the ground that the defendant had not exhausted his peremptory challenges, and the juror, upon a challenge for cause being overruled, was challenged peremptorily, and did not sit in the case. In *Monroe* v. *The State*, 23 Texas, 210, the juror had formed a partial opinion from having heard a part of the evidence before the examining court, which might influence his verdict, but he thought not; but he had no established opinion at the time of trial. He was challenged peremptorily, and did not sit. In *Cotton* v. *The State*, 32 Texas, 614, and in *Johnson* v. *The State*, 27 Texas, 758, the defendants did not exhaust their peremptory challenges and the objectionable jurors did not sit. So also in *Thomas* v. *The State*, 36 Texas, 315; and in *Grissom* v. *The State*, 4 Texas Ct. App. 374, the objectionable juror was disposed of by peremptory challenge. In *Black* v. *The State*, 42 Texas, 377, the juror had read what the court presumed to have been a report of a former trial in the newspapers, and was adjudged incompetent.

It is true, as has often been said in later years by judges in delivering opinions, that the times have changed, and that now the telegraph and the daily press bring to our

doors each morning full reports, from all parts of the civilized world, of any unusual occurrence that may transpire; and it cannot be expected that the intelligence of the land who now fill our jury-boxes shall remain in ignorance of great crimes occurring in our midst, or are to be lightly discarded from jury-service because their intelligence prompts them to form some opinion from what they may read concerning these occurrences. While we remember this, we should not be unmindful of other important considerations, two of which are, that amid all this rapidity of thought and its transmission the Constitution remains the same, and so does the mind of man. We can lay aside our opinions, our prejudices, and our convictions, with no more ease and certainty to-day than our forefathers could one hundred years ago; and that provision in our Constitution which guarantees to every person accused of crime "a speedy public trial by an impartial jury" means to-day what it did centuries ago, when first wrested from tyranny and consecrated with blood.

In this investigation the inquiry is addressed exclusively to the present condition of the juror's mind; and the modes by which he has reached his conclusion, if he has such conclusion, are wholly immaterial except in so far as they may tend to illustrate the strength of the conclusion, or its weakness. A mere impression, though derived from the testimony, does not disqualify if it be perfectly apparent, not from what the juror may say, but from all the evidence bearing on the issue, that such impression will not influence his action in finding a verdict. And on the other hand, a disqualifying opinion may be formed from mere hearsay, which is expressly recognized by our statute (Pasc. Dig., art. 3041), and by our decisions (*Shaw* v. *The State*, 27 Texas, 750; *Grissom* v. *The State*, 4 Texas Ct. App. 386). The fact that a juror may say that notwithstanding his opinion formed from hearsay he can try the case impartially, manifests in most instances a recklessness of judgment

and a state of mind less prepared to receive and allow a fair defence than if he had believed on proof which furnishes at lease *primá facie* evidence of guilt. *The People* v. *Mather*, 4 Wend. 229 ; *The People* v. *Gehr*, 8 Cal. 259 ; *Armistead* v. *The Commonwealth*, 11 Leigh, 657.

The case of *Staup* v. *The Commonwealth*, 74 Pa. St. 458, is generally regarded as a leading case in support of .the opposite doctrine ; but when the decision of the court is separated from the language of the judge who delivered the opinion it will be found not inharmonious. with the general current of American authorities. In that case a number of jurors said they had formed opinions as to the guilt or innocence of the prisoner from hearing or reading the testimony on the former trial, which opinions still rested on their minds. They were all challenged for cause, but the challenges were overruled. Amongst others was J. Evans Finley, who in answer to the question put to him said : " Have formed and expressed an opinion as to the guilt or innocence of the prisoner ; read evidence of former trial ; still entertain that opinion, which it would take some evidence to remove ; this opinion would not bias or influence my judgment if I were sworn as a juror ; this opinion was formed from reading evidence of former trial ; if sworn as a juror, I could and would make up my verdict exclusively upon the evidence given here, uninfluenced and unbiased by my present opinion." The prisoner challenged him for cause, but the challenge was overruled, and the juror sworn over the objection of the defendant. The court, on appeal, held the juror disqualified, and that the court below erred in overruling the challenge for cause. And Judge Agnew, in delivering the opinion of the court, used this language : "Whenever, therefore, the opinion of the juror has been formed upon the evidence given in the trial at a former time, *or* has been so deliberately entertained that it has become a fixed belief of the prisoner's guilt, it would be wrong to receive him. In such a case the bias must be too

strong to be easily shaken off, and the prisoner ought not to be subjected to the chance of conviction it necessarily begets."

And Judge Ector uses similar language in the *Grissom Case* (4 Texas Ct. App. 386), the actual decision in which was that an opinion or impression entertained sometime before the trial, but which is not expressly shown to exist at the time of the juror's examination, and which, from the evidence, was not likely to influence his finding, did not disqualify. But, as said before, the juror in that case did not sit; in which event the question would have presented a different phase, and one demanding the exercise of greater caution in its determination. Upon this question of a juror's disqualification by reason of an opinion founded on rumor, see *Meyer* v. *The State*, 19 Ark. 156; *Boone* v. *The State*, 1 Kelly, 631; *Willis* v. *The State*, 12 Ga. 444; *Maddox* v. *The State*, 32 Ga. 581; *Neeley* v. *The People*, 13 Ill. 685; *The State* v. *Jewell*, 33 Mo. 583; *The Commonwealth* v. *Knapp*, 9 Pick. 496; *Cotton* v. *The State*, 31 Miss. 504; *Fouts* v. *The State*, 7 Ohio St. 471; *McGowan* v. *The State*, 9 Yerg. 184; *The State* v. *Godfrey*, Brayt. 170.

Mr. Bishop, our most thoughtful and philosophic writer on criminal law, after a full citation of the leading American authorities, deduces the true rule as follows: "The true view would seem to be, that since the law presumes every man to be innocent until he is by judicial evidence proved in a court of justice to be guilty, and since the burden is on the prosecuting power to make the guilt appear affirmatively by proofs produced at the trial, if a man leaps in advance of the law, and settles in his own mind the question of guilt against the prisoner, whether by reason of what he has read or heard, or by reason of an inner impulse which condemns before it hears, he is not a fit person to be a juror in the cause; for his mind, which ought at least to be a blank on which the evidence might write its conclu-

sions, is already preoccupied.   It is vain for a man to say, or even believe, that he can judge impartially of a matter which he has already determined.   Human nature, as developed in the average of men, does not permit this.   The juror is to hear, and then say what he believes ; but if he believes before hearing that only which can lawfully affect his belief, namely, the testimony of the witnesses in open court, he is, in legal reason, disqualified to hear and be swayed by the testimony.   It is immaterial, therefore, whether the belief, which comes not according to the law, is derived from rumor, or from listening to statements of a more reliable sort. Likewise, if the juror has not expressed his belief, he is still unfit, though the expression of it might render him unfit in a yet higher degree.   Such is the legal reason which should govern the question."    1 Bishop's Cr. Proc., sect. 910.

Judge Marshall, in passing upon the question in *Burr's Case,* used these words : "I have always conceived, and still conceive, an impartial jury, as required by the common law and as secured by the Constitution, must be composed of men who will fairly hear the testimony which may be offered to them, and bring in their verdict according to that testimony, and according to the law arising on it.   This is not to be expected — certainly the law does not expect it — where the jurors, before they hear the testimony, have deliberately formed and delivered an opinion that the person whom they are to try is guilty or innocent of the charge alleged against him."    Burr's Trial, 128.

Judge Taney, in a criminal trial in 1854, held that, " if the juror has formed an opinion that the prisoners are guilty, and entertains that opinion now, without waiting to hear the testimony, then he is incompetent."    Whart. Cr. Law, sect. 2981.

Similar views were expressed by the chief justice in *Black* v. *The State,* and it was there said that the fact that the juror himself said it would require other and different

evidence to change his opinion showed or at least rendered it probable, that it was with some considerable attention to and consideration of the facts reported that he had formed his conclusion. And it was further held that if upon an examination of the juror it was doubtful whether he was impartial or not, it would be safer, and more in unison with the spirit of our Constitution and laws relating to the trial by jury, to decide against the qualification of the juror. 42 Texas, 382, 383.

While we recognize the rule that the action of the lower court in passing upon the qualifications of a juror should not be reviewed except in a clear case (*Reynolds* v. *United States*, 8 Otto, 157), yet after a careful consideration of the law and the facts pertaining to the juror Sanders we are constrained to say that he was not a fit person to pass upon the life of the prisoner. From his own testimony, he had formed an opinion that the prisoner was guilty at the time he had first heard of the occurrence, which opinion had remained with him from that time continuously to the time of trial, a period of nearly two years. He had heard the case talked about a great deal, believed what he had heard, and had frequently expressed the opinion that the defendant was guilty, and that he would take his seat upon the jury prepared to act upon it as an established opinion in case he heard nothing else to change it. In the language of Hawkins, the juror "hath declared his opinion beforehand that the party is guilty;" and according to the doctrine accepted nearly everywhere in the United States, and probably in every other locality where the common law prevails, he was incompetent. 1 Bishop's Cr. Proc., sect. 909. Certainly the repetition of his examination as many as six different times by the respective parties and the court is most convincing that his qualifications were of so doubtful a character that he should have been rejected on a challenge for cause.

The other errors assigned, including numerous objections

to the testimony, have received our careful consideration, but none of them are deemed sufficiently material to require discussion.    The charge of the court was a most admirable exposition of the law applicable to the case, and its highest commendation lies in the fact that, from the array of learned counsel who represented the defendant in this court, no word of criticism was heard.

The appellant, stranger though he is and guilty though he may be, has not had a fair and impartial trial, in that he was deprived of the right of inquiry as to the mode and manner of his presentment, and was tried by a juror who had already prejudged his case.    Let the judgment therefore be reversed, and the cause remanded for further proceedings in accordance with the forms of law.

*Reversed and remanded.*