##### FOR THE

## COUNTY OF ADDISON.

### JANUARY TERM, 1847.

PRESENT,

Hon. STEPHEN ROYCE, Chief Judge.
Hon. ISAAC F. REDFIELD,
Hon. MILO L. BENNETT, } Assistant Judges.
Hon. HILAND HALL,

## STATE v. MOSES GOODRICH.

Where a respondent was indicted for discharging a gun at a person and wounding him, and the person injured was a witness on the trial, and it appeared that the affray took place on the premises of the respondent, it was held, that the respondent might prove the declarations of the witness, made while on his way to the place where the affray happened,—the witness, upon being inquired of on cross examination, having denied them. And *quære*, whether such declarations and the acts of the witness, while going to the place, might not be proved without inquiry on cross examination, as showing the *intent* with which he went there.

In such case evidence might be proper of previous threats made by the witness as to the respondent, and of previous affrays between them, if so connected with the affray in question as to have any tendency to show that the respondent, at the time, had just cause of alarm, and to fear serious injury

to his person, or property.   But where a case is so indefinitely stated upon the bill of exceptions, as to leave it uncertain how far evidence offered was admissible, it will not be presumed that there was error in the court below in rejecting the evidence.

INDICTMENT for assault and battery upon one Green by firing at him with a gun.   Plea, not guilty, and trial by jury, June Term, 1846,—Bennett, J., presiding.

On trial evidence was given tending to prove that a quantity of hay had been attached, at the suit of Green against the respondent, as the property of the respondent; that on the evening of the 16th of October, 1845, Green and one Conner, at the request of the constable who made the attachment, went to the house of the respondent, where the hay was, for the purpose of seeing that the hay was safe and not in any way wasted ; that they arrived there between nine and ten o'clock in the evening; and that while quietly there, making no disturbance, the respondent fired his gun, loaded with powder and shot, upon Green and wounded him.

The respondent claimed, that the assault and battery, if committed by the respondent, were committed by him in defence of his person, or property ; and offered evidence tending to prove that there had, at previous times, been affrays at the dwelling house of the respondent, and that his house had been attacked and his property destroyed, and that Green was one of the company, and that Green had frequently threatened violence upon the person of the respondent.   The court decided, that it was not competent, as defence to this prosecution, to inquire into previous affrays or contentions between the respondent and Green, and excluded the evidence offered, but admitted evidence to show all that took place on the evening, or night, when the affray complained of took place, tending to show that the assault and battery complained of were committed in defence of the person, or property, of the respondent.

Green, who was a witness on the part of the prosecution, was asked by the respondent, on cross examination, whether he did not say to a certain person, while he was on his way to the house of the respondent on the evening when the affray complained of took place, that we wanted to get some powder for the purpose of blowing up the house of the respondent ; and Green denied that he so said.   The

State *v.* Goodrich.

respondent then offered to prove that Green did so say; but the court excluded the evidence.

The jury returned a verdict of guilty. Exceptions by respondent.

*Linsley* and *Beckwith* for respondent.

1. The degree of force a man may use in resisting an attack on his person, or property, especially in the night, depends very much on what he may reasonably consider the nature of that attack. If his house and property have been attacked by a mob on one night, and an attack apparently similar is made the succeeding night, he would be clearly justified in resorting to the greatest force immediately.

2. The witness to contradict Green should have been admitted. The question was not collateral. Whatever Green said, at the time, in reference to his purpose in going to the respondent's house, was evidence to contradict his statements made on the trial.

*G. W. Grandy*, state's attorney.

1. The testimony offered in reference to former affrays and controversies was properly excluded. A provocation, which will justify an assault and battery, must occur at the time of the affray; otherwise it cannot well be urged that the party acted in *self defence.*

2. The question put to the witnes, Green, on cross examination, was in regard to a fact clearly collateral to the issue. His answer was on that account conclusive. 1 Stark. Ev. 134. 12 Vt. 585.

The opinion of the court was delivered by

REDFIELD, J. The question made in the defence of the present case was, whether the principal witness on the part of the state, upon whom the defendant is charged with making an assault, did himself make the first assault, and whether what the defendant did was done in self defence. Green testified, that he did not make any disturbance about the defendant's dwelling, or assault upon his person. He was then asked if he did not, while on the way to the defendant's house, on the night of the affray, declare to a particular person, that he wanted some powder to blow up the defendant's house,—which he denied. The defendant then offered to show, that he did make

such declaration; and the court rejected the evidence, upon the ground that the inquiry concerned a matter wholly collateral to the main issue.

It is not always easy to determine precisely what is collateral to the main issue.   Something on that head must be left to the discretion of the judge presiding at the trial.   In the present case, if it was material to know with what *intent* the witness went there, that could only be shown by his acts and his declarations in connection with those acts.   For this purpose the efforts and inquiries, which the witness made, for help and implements, whether of offence, or defence, would be material.

As part of that intent it might have been shown, that he declared his intention to be only to see if the hay remained ; and we apprehend, what is stated in the bill of exceptions, in regard to the tendency of the testimony on the part of the state, to show that he went there *with that intent,* must have been derived, partly, at least, from his declarations on the way and while there.   That is the only way it could be shown, aside from his own testimony.   And we think, that all his declarations from the time of his setting out on this expedition, in connection with his acts, are competent, to show with what intent he went there ;—and if an innocent intent may be shown in this way, then the contrary may also be shown in the same manner, and this may be shown by Green, or any other witness ; and in this view the evidence was in no sense collateral.

If, then, Green denied making such a declaration, it might be shown, that he in fact did, both as tending to impeach the witness by contradicting him, and as going to establish the fact, that he went there for the purpose of beginning an affray, and as tending to justify, perhaps, more vigorous defence of any supposed offensive movements on the part of Green.   For a part of the evidence rejected was, that he had repeatedly threatened the defendant ; and it is not impossible, that if this evidence had been admitted by the court, the defendant might have satisfied the jury, that he had been informed of the fact of Green's approach, and of his declarations of his intent, —although, from the case, this seems hardly probable.

But these declarations are material, as showing the intent with which Green went there, and also his feelings towards the defendant ; and it has been held, both in this state and in England, that this last

point is a sufficient ground of impeaching a witness, and that the declarations of the witness to this effect may be shown, as substantive matter of proof, without first inquiring of him. *Lord Stafford's case*, 7 Howell's State Trials 1400,—where it was permitted to be shown, that the witness had attempted to suborn witnesses to testify falsely against the prisoner. So in *Thomas* v. *David*, C. & P. 350, where a female witness was offered, on the part of the plaintiff, to prove a promissory note, claimed to be forged, it was permitted to ask the witness if she was not the kept mistress of the plaintiff, for the purpose of showing, that she had a motive to favor the plaintiff, or was easily controlled by him, and might thus be induced to give false evidence. And, upon the witness denying it, she was contradicted by other witnesses,—the court holding the matter *not collateral.* So it is always competent to ask a witness, if he has not *said,* he would be revenged upon the party, against whom he is called, and this with reference to the very suit on trial, and, if the witness denies having made such declarations, to contradict him, by showing that he did make them. 2 Camp. 638. And in *Pierce* v. *Gilson,* 9 Vt. 216, it was permitted to show, that an ill state of feeling existed, on the part of the witness, as to the party against whom he was called, and this, *without first asking the witness.*

Whether, then, we consider the declarations of Green as tending to show, that he went there for the purpose and with the intent of making a serious assault upon the defendant, as a part of the *res gestæ,* and tending to characterize the whole transaction, both as to the defendant and the witness, and their several acts, and thus the better to enable the heirs to determine, whether the one, or the other, was the aggressor, and whether the defendant acted in good faith in the matter,—or as tending to show the state of mind, which the witness entertained towards the defendant, and the temptation, which he would have to put the most favorable construction upon his own acts and the most exaggerated one upon those of the defendant, the evidence was clearly admissible,—and probably without first inquiring of the witness,—and also as tending to impeach the witness, by contradicting his main evidence,—in which view he must first be inquired of. 1 Stark. Ev. 189, 199.

Upon the other point the case is too indefinitely stated, to determine, with much certainty, how far the evidence was admissible.

If the decision was intended to exclude all evidence of previous threats, or affrays, on the part of the witness, as to the defendant, unless upon that very night, it *might* be clearly wrong, and would be, if the testimony had any tendency to show, that the defendant, at the time, had just cause of alarm and to fear serious injury to his person or property. A case might have been made out, coming within the offer, which would have justified the defendant, even if he had taken the life of the witness ; and the decision of the court, in the terms in which it is expressed, would have rejected it, unless occurring at that very time. But we are not to presume any such case was proposed to be made out by the defendant, or it would have been admitted by the court. We rather presume, that the offer was intended to show, that the defendant and witness had had frequent quarrels,—which was not farther important, than as it tended to show the temper and disposition of the witness Green; and not having been offered for any such purpose, it is impossible for us to say there was error in rejecting it.

Judgment that the verdict be set aside, and the respondent have a new trial. Cause remanded for that purpose.