## No. 10,086.

### THE STATE OF LOUISIANA VS. HENRY WILLIAMS.

While, as a general rule, uncommunicated threats are not admissible, yet where communicated threats, followed by subsequent attack and difficulty leading to a killing have been proved, evidence of other threats made between the communicated ones and the assault may be received as corroborating the evidence as to the communicated threats, as indicating their meaning and seriousness, as characterizing the purpose of the assault, as throwing light upon the acts of deceased in connection therewith and as establishing the reality of the danger under apprehension of which defendant may have acted.

APPEAL from the Nineteenth District Court, Parish of Terrebonne. *Allen, J.*

*M. J. Cunningham*, Attorney General, for the State, Appellee.

*Tobias Gibson* and *W. F. Winchester* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. The sole question in this case is presented on the following bill of exceptions:

"Be it remembered that on the trial of this case, the State having shown by Gus Ridley, the first witness for the prosecution, a difficulty between the accused and the deceased, and that the deceased called the accused 'a broken jaw son-of-a-bitch; and also having shown, by George Champagne, another State witness, that the deceased said, 'I will kill you to-night, or you will kill me,' and that the deceased then left the bar-room, where the difficulty took place.

Whereupon the defense placed Louis Johnson on the stand, who

State vs. Williams.

testified that he was on the gallery of the barber shop about (40) forty feet from the bar-room when the difficulty took place, and the deceased in passing near him said, ' the damned broken jaw son-of-a-bitch hit me, and I am going to get even with him if 'I have to eat my supper in hell;' and the deceased returned to the bar-room in about a half hour, with a stick in one hand and something *shiney* in the other, like a knife or dirk, when his fatal wound was received ; to which evidence of threats objection was made by the district attorney as not communicated to the deceased, and was sustained by the court, when in truth and in fact the said evidence was offered, as specially stated, for the purpose of showing that the presumption was that the deceased himself was the aggressor, and to show what was his intent in returning to the place of fatal encounter; for it has been held that threats made by the deceased against the defendant, shortly before the killing, the deceased being at the time of the killing armed to carry out such threats, are admissible as parts of the *res gestœ*, and are verbal acts indicative of a present purpose and intention, and why he sought the accused, and lastly because it corroborates the evidence of threats, which had already been shown by the State witnesses, which evidence the Court refused to let the jury have, and this bill reserved to said ruling, and shown to the district attorney for his approval, and found correct, before tendering to his honor the judge for his signature, and to be placed of record in this case."

The judge *a quo* prefaces his signature by a statement which does not dispute any of the facts stated in the bill, but gives an account of the encounter from which it appears that when the deceased returned to the bar-room, after the first difficulty, he had a walking stick and struck the prisoner. The prisoner again pushed or knocked the deceased down and went into the front part of the saloon. He afterwards deliberately returned with a pistol in his hand. The deceased when he saw the prisoner coming, ran, and just as he reached the back door of the saloon the prisoner shot him in the back and killed him.

We see no relevancy in this statement to the question of the admissibility of the evidence offered, whatever might be its effect.

We are presented with a case where threats had been made which had been communicated to the prisoner, and which were followed by an actual return of deceased in search of the prisoner, and by a hostile demonstration in the shape of assault and battery; and the question is whether, in a such a case, other deadly threats made by deceased to others in the brief interval of half an hour between the first difficulty

and communicated threats and the return of deceased and his hostile assault on the prisoner are admissible, although not communicated.

We have frequently affirmed the general rule that uncommunicated threats are not admissible, but all rules have exceptions, and we think reason and authority concur in establishing their admissibility under the circumstances indicated as corroborating the evidence as to the communicated threats, as indicating their meaning and seriousness, as establishing the purpose with which the deceased provoked the rencontre and throwing light upon his acts in connection therewith, and as confirming the reality of the danger under the apprehension of which defendant may have acted. The authorities to this effect are numerous. 2 Wharton, C. L. § 1027; Stokes vs. People, 53 N. Y. 164; State vs. Elkins, 63 Mo. 159; Cornelius vs. Com., 15 B. Mon. 539; Holler vs. State, 37 Ind. 57; State vs. Abbott, 8 W. Va. 741; State vs. Goodrich, 19 Vt. 116; Keener vs. State, 18 Ga. 194; State vs. Turpin, 77 N. C. 473; Campbell vs. People, 16 Ill. 17; State vs. Dodson, 4 Oregon 64.

We think there was error in the rejection of the testimony, and while its admission may not support the prisoner's defense, we think he was entitled to its benefit before the jury.

It is, therefore, ordered and decreed that the verdict and sentence be annulled and set aside, and that the case be remanded for further proceedings according to law.