PROVOSTY, J.
The accused, a youth of 19, and the deceased, his uncle, lived in the same house, which was that of the mother of the deceased and grandmother of the accused. The two were digging a well near the house with a neighbor named Janis, when the deceased and the accused had some words, and the deceased went into the house, got his Winchester rifle, and was only prevented from killing the accused by the forcible interference of his mother and Janis. He declared his intention to kill accused, and paraded up and down the public road nearby for more than an hour carrying his rifle. At about 1 o’clock he met the father of accused in the road and told him he was waiting for the accused, and said to him:
“Please lend him 'your gun. My life is worth nothing to me.”
Still later, at about 5 o’clock, he was seen without the rifle, but where this was, or where he was until next morning, the record-does not show. The father communicated to-accused what deceased had said, and accused induced Janis to sleep in his room that night for protection. Just after Janis had left the next morning, it being yet only about daylight, the deceased, whose room was upstairs and was reached by a stairway on the front gallery, came down the stairs, and to the door of the sleeping room of accused which opened upon the gallery, opened the door, and was in the act of coming in, when, without a word being spoken, accused shot him discharging both barrels of his shotgun loaded with bird shot, and killing him instantly. The accused dropped the gun where he stood, near the other door of the-room, and ran. The gun was found in the doorway. The body of the deceased was found five feet within the room. The accused knew the deceased to be a dangerous-man, who would carry but any threats he might make. The sleeping room of accused served also as the sitting room, and deceased had a trunk in it; but whether he had anything in the trunk is not stated. He was-unarmed, but his rifle was found conveniently at hand at the head of the stairs.
When the accused offered to prove the foregoing facts, the prosecution objected, on the ground that “the details of the previous diffi *248 culty were no part of the res gestee and not admissible in evidence, because no overt act ■or hostile demonstration whatever by. the deceased towards the accused was shown on that day or at the time of the shooting,” and the court sustained the objection.
We think this ruling was wrong. A man’s coming into another man’s sleeping room may be a friendly or a deadly act, according to circumstances; and how is its character to be determined unless the circumstances are known. Take the naked fact of the accused having shot his uncle as the latter was coming into the room, which probably was the version of the matter given to the jury by the state’s evidence, and the question put to the accused by one of the jurors just as the accused began to testify, becomes perfectly natural:
“Then I understand you lay in wait for him and assassinated him?”
But present all the facts, and a different complexion is put upon the matter. The coming of the deceased, judged, as it must be, from the standpoint of the accused, who knew what had taken place and was aware of the dangerous and determined character of the man, must then be considered to havebeen acontinuation of what had taken place the day before; that is to say, an attempt to carry out the threat then made, ■and to have been a hostile act, necessitating the promptest measures of protection. Possibly the accused might have escaped by flight; but that is another question, and one which has absolutely nothing to do with the question of whether the entrance into his room was, under all the circumstances, a hostile demonstration or not. We think it was a hostile demonstration, and that the accused had the right to show the facts by which its character was to be judged.
The case is peculiar, in that usually the proof of a hostile demonstration is made for the purpose of opening the door to evidence of previous difficulty, or threats, or dangerous character, whereas, here this evidence becomes necessary for ascertaining whether there was a hostile demonstration, or rather, whether the demonstration was hostile; and it is again peculiar, in that, while every one must feel that the evidence is absolutely necessary for an intelligent judgment on the conduct of the accused, yet the exact principle of the law of evidence under which it is admissible is not so clear. Counsel for defendant invokes the rule of res gestae, as applied where the one event has been but a continuation of the other; but that rule is one of exceeding vagueness, and in a matter of so grave moment the judicial mind craves something of more precise application. Such is found, we think, in the rule embodied in article 9 of Stephen’s Evidence:
“Pacts necessary to be known to explain or introduce a fact in issue, or relevant to the issue, * * * are deemed to be relevant, in so far as they are necessary for these purposes.”
Dealing with the same subject, Elliott, Evidence, pars. 152 and 153, has the following:
“There is little difficulty in determining that a fact in issue is relevant, whether it be the most important fact in issue or not; but, as already stated, evidence of facts which are not themselves directly in issue may also be admissible, where such facts are relevant to a fact in issue. It is with regard to evidence of facts merely relevant to facts in issue that the difficult questions usually arise. The law upon this subject is the outgrowth of experience and precedent rather than any system of principles, and it cannot be satisfactorily treated without considering in detail the classes of cases, issues, or circumstances under or with reference to which decisions upon the subject have been made. In other words, much may depend upon the nature and circumstances of each particular case; few general rules or principles can be deduced from the decisions, and even those that can be said to rise to the dignity of general rules are either not well defined or else they are of limited application.
“As a general rule, facts necessary to be known to explain or introduce a fact in issue or a relevant fact, or which support or rebut an inference raised by such- fact, are relevant, so far as they are necessary for such purpose.”
*250 Rice on Evidence expresses the same idea, as follows:
“Restating the above proposition, we may say that facts showing the existence of any state of mind, such as intention, knowledge, good faith, negligence, rashness, ill will, or good will against any particular person, or showing the existence of any state of body or bodily feeling, are relevant, when the existence of any such state of mind or body or bodily feeling is a fact in issue or relevant to the issue.
“Any other facts are relevant from which the facts in issue are presumed, or are logically inferable, or which, having regard to the relation of cause and effect, or the ordinary motives of human conduct, or the usual sequence of events, would, considered by themselves, create a probability with respect to the facts in issue.”
The fact in issue needing to he explained is the motive with which the deceased Was entering the room, and the inquiry must be made from the standpoint of the accused at the moment he was called upon to act, and the events of the preceding day, as well as the threats, tend directly to show what this motive was. This inquiry into the motive of the deceased in entering the room is precisely the same as it would have been if, instead of having been killed, he had killed, and his motive in entering was being inquired into. Would any one then have said that the events of the preceding day and the threats could not be proved for showing his motive in entering into the room. These antecedents, considered from the standpoint of the accused at the moment, show beyond question that the motive of the deceased in entering the room was deadly. If so, his act was a hostile demonstration.
It becomes unnecessary to pass upon the' bill reserved to the question referred to above as having -been put by the juror to the accused. We will say, however, that the ruling of the learned trial judge was correct, to the effect that, while the question was improper and the accused was not bound to answer it, yet it did not necessarily show the juror to be incompetent to sit on the case, or so manifestly tend to prejudice the case of the accused as to make a new trial necessary. True, the question was pregnant with an assertion of the guilt of the accused, but that assertion did not purport to be made as a statement emanating from the juror and based upon some independent information possessed by him, but simply as an inference drawn, just as any other member of the jury might have drawn it, from the statement of the accused and the other evidence in the ease.
■Judgment and verdict set aside, and case remanded for trial.