O’NIELL, C. J.
 

 (dissenting). I subscribe to the dissenting opinion written by Mr. Justice ST. PAUL, as far as it goes; but my opinion is that the district judge was wrong in instructing the jury that they could not consider the testimony of Dr. Dreher or Mrs. Le Bceuf as being evidence either for or against either of his or her codefendants. The rule that a statement made by an accomplice in a crime is admissible in evidence only against the party making the statement is applicable only to statements made out of court — not to testimony given by an accomplice on the witness stand, under oath, confronting the other defendant or defendants, and subject to cross-examination. If a statement made by an accomplice out of court amounts to a confession, or is an incriminating statement, the state may prove it by any witness who heard it, or by introducing the statement itself in evidence if it is in writing; but the proof of such a confession or admission is not admissible in evidence either for or against a codefendant, or against any one except the party who made it, because, as to all other persons, the evidence is what is called hearsay evidence. The Constitution itself, in the Bill of Rights, guarantees that every ^person accused of- crime shall have the right to be confronted with the witnesses against him. But, when one of several codefendants takes the witness stand and testifies to facts which he or she knows, the testimony is not hearsay evidence, either for or against the other defendant or defendants, and it is just as competent evidence for or against a codefendant as it is for or against the party testifying. In fact, such evidence is more competent and more worthy of belief in so far as it affects a codefendant than it is for the party testifying. It would be violative of the first law of nature to assume that a defendant, testifying as a witness in his own ease, would not be influenced any more by his personal interest in the outcome than by that of a codefendant.
 

 The case of State v. Smith, 156 La. 685, 101 So. 22, is really not authority for the proposition that the testimony given by a defendant on trial cannot be considered as evidence for or against a codefendant also on trial. The statement to that effect, made by the author of the opinion in Smith’s Case, was not necessary for the decision of the case, and was therefore mere obiter dictum. The verdict and sentence in Smith’s Case had to be affirmed — and were affirmed — because there was no bill of exception taken to the judge’s charge to the jury. No complaint was made when the judge charged the jury that the testimony of one of the two defendants on trial could not be considered as evidence either for or against the other. The complaint was first made in a motion for a new trial, which, of course, was too late. Besides, there was no formal bill of exceptions reserved, even to the overruling of the motion for a new trial, and in fact no formal bill was taken to any ruling, and there was no assignment of error in the case. It was so said at the very beginning of the opinion, as shown by the published report of the case. Besides all of which, Smith’s Case was submitted and decided by this court without the benefit of either argument or brief on behalf of the appellant, and there was no application for a rehearing.
 

 The reason why the rule prevailed at com-' mon law that, when two or more persons were on trial for the same crime, one of them could not be called as a witness either for or against another, was that at common law a person on trial for crime was not a competent witness in the ease. 1 The rule had reference only to the competency of the witness, not: the competency of the evidence. That is why,
 
 *989
 
 at common law, an accomplice in a crime, if lie was not on trial, could be called as a witness for or against another person charged with the same crime. But, when the common-law rule which forbade a person on trial to be a witness in his own case was abolished in, Louisiana, as it was by the Act 29 of 1886, p. 39, there remained no justification or excuse whatever for holding that the testimony given by one of several defendants could not be considered as evidence for or against another. That is a matter of such common sense that I hardly know how to discuss it. The act of 1886 itself declared, in language as plain as the noonday sun, that, if a defendant on trial in a criminal case should avail himself of the privilege of being a witness in the ease, he should be subject to all of the rules applying to other witnesses, and be subject to cross-examination as to all matters concerning which he gave his testimony, which should be weighed and considered according to the general rules of evidence, and that the judge should so charge the jury. Here is what the statute declared:
 

 “That the circumstance of the witness being a party accused” — mark you, not
 
 the party
 
 but
 
 a party accused
 
 — “shall in no wise disqualify Mm from testifying; provided, that no one shall be compelled to give evidence against himself; and provided, that if the person accused avails himself of this privilege, he shall be subject to all the rules that apply to other witnesses, and may be cross-examined as to all matters concerning' which he gives his testimony; and provided further, that his failure to testify shall not be construed for or against him; but all testimony shall be weighed and considered according to the general rules of evidence; and the trial judge shall so charge the jury.”
 

 The first case in which the court fell into the error of saying, after the statute of 1886 was enacted, that one codefendant could not be a witness for or against the other, was State v. Armand and Numa Angel, 52 La. Ann. 485, 27 So. 214, where the court cited, in support of the proposition, 3 Rice on Evidence, § 327, which refers only to the common-law rule, and four decisions-which were not at all appropriate,. because they were rendered before 1886, viz., State v. Mason, 38 La. Ann. 476; State v. Hamilton, 35 La. Ann. 1043; State v. Russell, 33 La. Ann. 135; and State v. Prudhomme, 25 La. Ann. 523. 'What was said on the subject in State v. Angel, however, was mere obiter dictum, because the author of the opinion observed that the defendant who offered to testify in the case, Numa Angel, was allowed to testify to the “facts within his knowledge, leaving to the jury the duty of applying the evidence thus given to the determination of the whole case.” The only ease in which the error was really made was State v. Breaux (in 1901) 104 La. 540, 29 So. 222, where the author of the opinion followed blindly the obiter dictum in State v. Angel, and cited no other authority. In Breaux’s Case, the court stated — as if the common-law rule still prevailed — that the incompetency of the testimony of the eodefendant had reference only to the witness, and not to the evidence, and that therefore one of the codefendants could not even relate facts forming a part of the res gestae, as far' as the other codefendant was concerned. The error of the ruling was so palpable that the Leg" islature, at its next session, enacted the Act 185 of 1902, p. 355, approved July 10, 1902. There is no possible doubt that the statute was enacted merely to correct the error made by the court in State v. Breaux, the year before, because the only change made in the act of 1886 was the insertion of the words, “or being jointly tried,” after the expression, “that the circumstance of the witness being a party accused,” so that the law was made to read:. “That the circumstance of the witness being a party accused, or being jointly tried, shall in no wise disqualify him from testifying.” At the next session of the Legislature, the statute was again amended, by the Act 41 of 1904, p. 77, by inserting, after
 
 *991
 
 the proviso that the husband could not testify for or against his wife, or the wife for or against her husband, “except in such cases as is now provided by law,” the words “and except in cases where either the husband or wife is on trial for bigamy.” There was no change made in so far as the act of 1902 declared “that the circumstance of the witness being a party accused, or being jointly tried, shall in no wise disqualify him from testifying,” etc.
 

 The next case in which the question arose was State v. Lebleu et al., 137 La. 1007, 69 So. 808. The author of the opinion in that case did not cite or refer to the case of State v. Angel or State v. Breaux, but said that the erroneous construction of the act of 1886 had been made in State v. Sims and Mays, 106 La. 453, 31 So. 71 (decided June 30, 1901). It was said that the amendment of the statute, by the act of 1902, was made because of the ruling in State v. Sims and Mays; but that was a mistake, because the case of State v. Sims and Mays was one in which a confession was made out of court, and the ruling was merely that the proof of the confession, made by one of the defendants, could not be considered as evidence either for or against the other defendant; and the four decisions cited in State v. Sims and Mays were all cases in which one of the defendants had made a confession out of court, and in which the ruling was merely that the proof of the confession could not be considered as evidence either for or against the other defendant; the' four cases cited being State v. Havelin, 6 La. Ann. 167; State v. Monie, 26 La. Ann. 513; State v. Harris, 27 La. Ann. 573; and State v. Johnson, 47 La. Ann. 1230, 17 So. 789 — all of which decisions were rendered before 1886. It- is true that the author of the opinion in State v. Lebleu rested his decision on the act of 1902, but he admitted that the ruling which he thought had been made in State v. Sims and Mays, and which in fact had been made in State v. Breaux, following the obiter dictum in State v. Angel, was an erroneous construction of the statute of 1886; and he admitted that the only purpose of the act of 1902 was to correct the error which the court had made. Here is what the author of the opinion in State v. Lebleu said on the subject:
 

 “Inasmuch, therefore, as the decision in State V. Sims and Mays, supra, and other cases therein cited, left no doubt that, under the act of 1886, a defendant in a criminal prosecution was a competent witness in his own behalf, with privilege if he chose, of confessing his guilt, even though on trial jointly with another, charged with the same offense, and, inasmuch as his testimony for or against such other defendant was held to be inadmissible, it is clear that that only purpose of the act of 1902 was to place it equally beyond doubt that such defendant should be a competent witness for or against a codefendant with whom he is ‘being jointly tried.’
 

 “In some other jurisdictions the act of 1886 would, of itself, have made a person of proper understanding a competent witness for or against a codefendant, as well as for or against himself. 20 Oye. 450, note 1. But, as this court had held otherwise, it appeared necessary to pass the act of 1902, and expressly declare that:
 

 “ ‘The circumstance of the witness being the [meaning a] party accused,
 
 or being jointly tried, shall, in no wise, disqualify him from testifying’
 
 in all criminal matters.
 

 “In the monograph entitled ‘Witnesses,’ in 40 Cyc., the learned author, after dealing at considerable length with the subject of the disqualification of witnesses, under the common law [rule], from interest, says:
 

 “ ‘The common-law doctrine of incompetency arising from interest has been stated in outline merely, without any attempt to give a complete treatment, for the reason that it is of no practical importance at the present time, as, in England, Canada, and every state and territory in the United States except Porto Rico, the common-law rule has been abrogated by statute. The modern statutory rule is that parties to, and persons interested in the event of, a civil action are perfectly competent as witnesses therein', notwithstanding their interest, and the same rule applies in criminal proceedings; even a defendant on trial being allowed to testify in his own behalf, if he so desires, and the abrogation of the common-law
 
 *993
 
 rule is universally recognized in the decisions of the courts.’ ”
 

 In 1916, the Legislature enacted a new statute on the subject (Act 157 of 1916, p. 379), so as to define the competency of witnesses in civil as well as criminal proceedings, and to declare private conversations between husband and wife to be privileged; and, in lieu of the concluding language of the acts of 1992 and 1904, the Legislature substituted an exact replica of the federal statute on the subject, 'the Act of Congress of March 16, 1878 (20 Stat. at L. 30, e: 37 [28 USCA § 632]). That part of the act of 1916 therefore reads:
 

 “In the trial of all indictments, complaints, and other proceedings against persons charged with the commission of crimes or offenses, a person so charged shall, at his own request, but not otherwise, be deemed a competent witness; and his neglect or refusal to testify shall ■not create any presumption against him.”
 

 The federal statute reads:
 

 “That in the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors, in the United States courts, territorial courts, and courts-martial, and courts of inquiry, in any state or territory, including the District of Columbia, the person so charged shall, at his own request but not otherwise, be 'a competent witness. And his failure to make such request shall not create any presumption against him.”
 

 It is true that the Legislature did not, in the act of 1916, repeat the unnecessary expression that was adopted in the act of 1902, “or being jointly tried,” in order to correct the error that was made in State v. Breaux. But, when we consider that this court had already acknowledged the error in State v. Lebleu, and had acknowledged that the Legislature had deemed it necessary to pass the act of 1902 solely for the purpose of correcting the error made in State v. Breaux, it would be very unfortunate and unreasonable for this court to fall back into thé error, by saying again that the removal of the common-law disqualification of a defendant on trial, in a criminal prosecution, as a witness in the case, did not remove his disqualification completely. If we repeat or persist in the error made in State v. Breaux, which the Legislature promptly corrected by a statute which we have virtually acknowledged was altogether unnecessary, we will only compel the Legislature, at its next session, to correct the error again by trying to make plainer to us that which is already as plain as the midday sun. No good or valid reason can possibly be suggested why the testimony given voluntarily by a defendant on trial should not be considered as evidence for or against another defendant on trial. In State v. Angel, already referred to, 52 La. Ann. 486, 27 So. 215, the author of the opinion said:
 

 “It is easy to foresee that where a different ruling sustained than as above, it would sanction a practice that would likely result, oftentimes, in one on trial with another being called •as a witness against his will and greatly to his prejudice.”
 

 The answer to that is that if the provisions in the Constitution of the United States and of this state were not enough protection, surely the act of 1916 is sufficient when it says that “a person so charged shall,
 
 at Ms own request, hut not othenvise,
 
 be deemed a competent witness.”
 

 It would be not only illogical and unreasonable but very unjust for this court to construe the Act 157 of 1916 in the way that was suggested in State v. Smith, and say that, even though a defendant on trial is a competent witness if he requests the privilege of testifying, he is only a competent witness for or against himself, but not for or against any other defendant on trial. Take the case before us as an example: There were three defendants on trial, Dr. Dreher, Mrs. Le Boeuf, and James Beadle, all accused of the murder of Mrs. Le Bceuf’s husband, James Le Boeuf. The homicide was committed at night, on the flood waters of Lake Palourde, in the corporate limits of Morgan City. Le Boeuf was in a
 
 *995
 
 small boat', or pirogue, and'was tbe only person in the boat. His wife was in another such boat ten or 'twelve feet behind his boat. Dr. Dreher and James Beadle approached in another boat, and either Dreher or Beadle shot and killed Le Bceuf with a shotgun; and they afterwards ripped the body open and tied railroad angle irons to it and sank it in the lake. The only witnesses to the homicide were Dr. Dreher and James Beadle and Mrs. Le Bceuf. She paddled away from the scene immediately after the shooting, and had nothing to do with the cutting open or disposing of the body. She was not near enough to either of the other boats, at the time of the shooting, to participate in the killing, or to prevent it. She had written a note to Dr. Dreher on the day of the homicide, telling him that she and her husband were going boat riding on the lake that night. The note which was introduced in evidence in her behalf, and which was said to have been found in a desk drawer in Dr. Dreher’s office, by her at-, torneys, after the arrest of the three defendants and while they were in jail, was a note to the effect that Le Bceuf had consented to meet Dr. Dreher on the lake that night and have an amicable settlement of an enmity theretofore existing between them, which had resulted from a suspicion on the part of Le Bceuf of intimate relations between Dr. Dreher and Mrs. Le Boeuf. Dr. Dreher and Mrs. Le Bceuf both swore that that was the note which she had sent to him on the day of the homicide; but the sheriff testified that, in a confession made by Dr. Dreher in jail,' he said that Mrs. Le Bceuf had said in the note which she wrote to him, “Xou’d better get him [meaning her husband] tonight, or he will get you.” It was mainly on that evidence, and on the proof of certain incriminating statements made by Mrs. Le Bosuf, that she was convicted of murder and condemned to be hanged. She and Dr. Dreher testified on the trial that Beadle fired the gun that killed Le Bceuf, but that Le Bceuf fire^d a pistol at Dreher and Beadle first, and that Beadle then fired in self-defense. The three defendants were all represented by the same lawyers until a considerable part of the evidence was heard, when Beadle requested the judge to appoint an attorney to represent him separately; and the judge appointed two lawyers, other than those who represented Dr. Dreher and Mrs. Le Boeuf, to represent Beadle. 1-Ie did not testify in the case; but a written statement, signed by him in jail, was introduced in evidence in his behalf, in which he said, substantially, that he went out in the boat with Dr. Dreher with the understanding that they were going hunting, and without knowing that the doctor intended to, kill Le Boeuf, and that the doctor shot and killed Le Boeuf without any provocation. Beadle’s statement would have been ruinous to Dr. Dreher if Beadle had taken the witness stand and testified to the facts contained in his written stateinent; but his written statement, having been made out of court and while he was not under oath, or subject to cross-examination, was, of course, not admissible as evidence either for or against Dr. Dreher or Mrs. Le Bceuf; .and the judge instructed the jury that the ex parte statement of Beadle was admissible only in so far as it affected the question of his guilt or innocence, and should not be considered as evidence either for or against Dr. Dreher or Mrs. Le Bceuf. As a matter of fact, Beadle’s written statement was not a confession or admission of guilt on his part, and did not incriminate him in any way, but was merely a self-serving declaration, which would not have been' admissible in evidence at all if the district attorney had objected to its being introduced in evidence, but no such objection was made, and Dr. Dreher and Mrs. Le Bceuf, of course, could not successfully object, when the judge had instructed the jury that they could not consider Beadle’s ex parte statement as being evidence either for or against Dr. Dreher or Mrs. Le Boeuf. The judge’s
 
 *997
 
 ■ instruction to the jury, in that respect, was correct, because Beadle did not avail himself of the privilege of testifying on the trial, and he could not be compelled to testify.
 

 The jury rendered an unqualified verdict of guilty against Dr. Dreher and Mrs. Le Bceuf, which condemned them to be put to death, and rendered a verdict of guilty without capital punishment against Beadle, which sent him to the penitentiary for life. He did not appeal.
 

 As a result of the judge’s instruction to the jury that they could not consider the testimony of either Dr. Dreher or Mrs. Le Boeuf either for or against either of his or her codefendants, each of them was deprived of the benefit of the testimony of the other; and each of them was thus unjustly forced to depend for an acquittal solely upon his or her own testimony. The ruling was therefore very -prejudicial to Dr. Dreher and Mrs. Le Boeuf.
 

 The record does not disclose that the attorneys for Dr. Dreher and Mrs. Le Bceuf reserved a bill of exceptions to the judge’s instruction to the jury that they could not consider Dr. Dreher’s testimony in so far as it was favorable to Mrs. Le Bceuf, or consider her testimony in so far as it was favorable to Dr. Dreher. Perhaps the attorneys were misled — as I believe the judge himself was misled — by the declaration made, unnecessarily, in the opinion in State v. Smith, that the testimony of one codefendant on trial could not be considered as evidence for or against another. Eor that reason — and especially in a case of life and death — we ought to be considerate of any omission that might otherwise be deemed laches on the part of the attorneys in that respect.
 

 Bills of exception were reserved, however, to the inconsistent ruling of the judge in allowing the attorneys representing Beadle to cross-examine Dr. Dreher and Mrs. Le Boeuf, after the judge had ruled and instructed the jury that the testimony which had been given by Dr. Dreher or by Mrs. Le Bceuf could not be considered as evidence either for or against Beadle. We must bear in mind that Beadle and his newly appointed attorneys had assumed an attitude hostile to Dr. Dreher and Mrs. Le Bceuf. Beadle was not willing to admit that he had shot Le Boeuf in self-defense. The self-serving statement which Beadle had “signed in jail was that Dr. Dreher had hilled Le Boeuf without any justification or provocation whatsoever. Beadle’s lawyers had no more authority or right to prosecute by cross-examining Dr. Dreher or Mrs. Le Boeuf than any unemployed lawyer in the courtroom had. They had no right to cross-examine Dr. Dreher or Mrs. Le Bceuf for the purpose of bringing out evidence in favor of Beadle, because the judge had charged the jury that any testimony given by Dr. Dreher or Mrs. Le Boeuf could not be considered as evidence in favor of Beadle; and the attorneys had no right to cross-examine Dr. Dreher or Mrs. Le Boeuf for the purpose of discrediting their testimony in so far as it might have been unfavorable to Beadle, because the judge had charged the jury that any testimony given by either Dr. Dreher or Mrs. Le Boeuf could not be considered as evidence against Beadle. It will not do to say that the cross-examination of Dr. Dreher and Mrs. Le Bceuf by the attorneys who had no authority or right to cross-examine them did no. harm. The object and purpose of the cross-examination was to discredit them as witnesses, and to break down their defense by showing that there were illicit relations between them before the homicide and that therefore Dr. Dreher had a motive for killing Mrs. Le Bceuf’s husband. ' Such a cross-examination by lawyers having no authority or right to prosecute Dr. Dreher or Mrs. Le Boeuf was necessarily and essentially harmful and unfair to them. Dr. Dreher and Mrs. Le Bceuf had been grilled already for hours and hours by the district attorney. On that subject, the majority opinion in this case con
 
 *999
 
 tains (on page 36) this remarkable argument, viz.:
 

 “When it is considered that both defendants [meaning Dr. Dreher and Mrs. Le Boeuf] had been thoroughly grilled by the able State’s attorney on cross-examination, and that their credibility had been severely tested before they were consigned to the hands of the attorneys for Beadle for cross-questioning, it does not appear by any means that the latter cross-examination was
 
 manifestly
 
 to their prejudice, especially as the plea of self-defense tendered by defendants is without foundation in fact, as is shown by the per curiam of the trial judge to bill No. 71.”
 

 Because Dr. Dreher and Mrs. Le Boeuf were already thoroughly grilled by the able district attorney, and because their credibility was already severely tested, before they were consigned to the hands of the attorneys for Beadle for cross-examination, is all the more reason why it was unjust to subject them to further grilling at the hands of the attorneys who had no authority or right to grill them. What more .evidence does the learned author of the majority opinion want “that the latter cross-examination was
 
 manifestly
 
 to their prejudice”? He says that the plea of self-defense tendered by the defendants is without foundation in fact, as is shown by the per curiam of the trial judge to Bill No. 1. What have we to do — and what had the district judge to do — with the sufficiency of the evidence on the question of self-defense? The Constitution of this state, and of the United States, and of every one of the United States, makes the jury the sole judge of the sufficiency of the evidence on the question of guilt or innocence of a defendant in a criminal prosecution. All that we judges have to do in such cases is to decide the questions of law, and see that the defendant has had a' fair and impartial trial — see that the guilty shall always have justice, and the innocent nothing more. Speaking, however, of the so-called “plea of self-defense tendered by the defendants,” we must not forget that self-defense is not a special plea, like insanity, as to which the defendant bears the burden or proof. This court said, in State v. Ardoin, 128 La. 14, 54 So. 407, Ann. Cas. 1912C, 45, and in State v. Varnado, 128 La. 883, 55 So. 562, and in State v. Herring, 131 La. 972, 60 So. 634, and in State v. Johnson, 149 La. 927, 90 So. 258, and in State v. Scarborough, 152 La. 677, 94 So. 204, and in State v. Vial, 153 La. 883, 96 So. 796, and in State v. Linden, 154 La. 66, 97 So. 299, and in State v. Conda, 156 La. 679, 101 So. 19, this:
 

 “Self-defense is not a special plea. It is involved in the general issue tendered by the plea of not guilty. The burden is not upon the accused to prove that he acted in. self-defense. It is upon the state to prove beyond a reasonable doubt that the killing was done feloniously, and therefore not in self-defense.”
 

 The author of the majority opinion in this case, in discussing the judge’s ruling allowing Beadle’s lawyers to cross-examine Dr. Dreher and Mrs. Le Boeuf, ignores the fact that the judge had instructed the jury that the testimony given by Dr. Dreher and Mrs. Le Boeuf could not. be considered as evidence for or against Beadle. On page 35 of the majority opinion, it is said:
 

 “Beadle had
 
 denied self-defense
 
 in his confession,
 
 and in the defense
 
 made by him on the trial of the case. The testimony offered by defendants [meaning Dr. Dreher and Mrs. Le Bceuf] in support of the plea of self-defense would be evidence
 
 for
 
 Beadle, if the jury believed and accepted it; but if the jury disbelieved or rejected it, then Beadle would be placed before them as the actual slayer of deceased without just cause or excuse.
 

 “The defendants [meaning Dr. Dreher and Mrs. Le Bceuf] were taking no chances at all as to their own necks 'in making a plea of self-defense
 
 for
 
 Beadle against his wishes, and antagonistically to his defense in the case, which was a denial of the-commission of the homicide at all. This presents an unprecedented situation, and the case before us becomes sui generis in that defendants, Dr.. Dreher and Mrs. Le Boeuf, have assumed to tender
 
 on behalf of Beadle,
 
 their codefendant, and to force upon him, a plea of self-defense, which he denies and repudiates in toto.
 

 
 *1001
 
 “Defendants [meaning Dr. Dreher and Mrs. Be Boeuf] might as well have pleaded
 
 insanity
 
 for Beadle at the time of the hilling, although Beadle’s defense had been that he was sane and present at the commission of the homicide but did not participate therein in any way.
 

 “Well might defendants [meaning Dr. Dreher and Mrs. Be Bceuf] plead self-defense for themselves, if they had been the actual slayers; but, when they attempt, as in the present ease, to plead justifiable homicide based upon a plea of self-defense
 
 mads by them, for Beadle,
 
 they are wrongfully invading the constitutional and the personal right of their codefendant to plead for and to defend himself, as he may deem fit, and manifestly to his prejudice and to his injury. Const. 1921, art. 1, § 9.”
 

 With due respect, let me say, that is the most astounding argument I have ever read. It is based upon the false premise that self-defense is a special plea, like insanity, as to which the pleader bears the burden of proof; whereas, as I have shown by the quotation from the long list of decisions cited — and no authority can be cited to the contrary— self-defense is not a special plea, but is involved in the general issue tendered by the plea of not guilty; and the burden of proof is never on a defendant to prove that he acted in self-defense, but is on the state to prove beyond a reasonable doubt that the homicide was committed feloniously, and not in self-defense. The doctrine stated in the majority opinion is that Dr. Dreher and Mrs. Be Boeuf had no right to testify, and were “wrongfully invading the constitutional and personal right of their codefendant to plead for and defend himself as he deemed fit,” when they/ testified — no matter how true it "may have been — that Beadle was the one who shot Be Bceuf, after Be Bceuf had shot at Dreher and Beadle. In other words, the doctrine stated in the majority opinion is that, if a man named Be Boeuf has been killed by one of two men in a boat, they being named Dreher and Beadle, Dreher • is forbidden to say that Beadle fired the fatal shot in self-defense, because such a defense on Dreher’s part would be “wrongfully invading the constitutional and personal right of his codefendant to plead and defend himself as he deems fit,” if Beadle says that Dreher fired the fatal shot. The author of the majority opinion in this case seems to assume, beyond all doubt, that Dr. Dreher is the one who fired the fatal shot. The question whether Dr. Dreher or Beadle fired the fatal shot is a question of fact, which we judges have nothing to do with. Two of the three equally interested witnesses testified that Beadle fired the fatal shot, and he alone denied it. The question therefore remains in doubt.
 

 This brings me to the other point on which I subscribe to the dissenting opinion written by Mr. Justice ST. PATJB, as far as it goes; that is to say, that, when a defendant on trial for murder testifies that the homicide was committed in self-defense, or when any witness in the, case so testifies, the defendant has the right to introduce, in corroboration of such evidence, proof of the dangerous character of the deceased, or of previous threats made by the deceased to kill the defendant.
 

 • It cannot be seriously disputed that, when the defendant on trial, for murder invokes the law of self-defense, the question whether he or.the deceased was the aggressor in the fatal difficulty is a question of fact, on which depends the guilt or innocence of the defendant. As a general rule, the question whether the defendant or the deceased was the- aggressor, in such a ease, is the only question of fact on which depends the question of guilt or innocence of the defendant. To allow the judge to withdraw that question from the jury and to decide it for them is violative of the Constitution. Section 9 of article 19 of the Constitution (which was article 179 of the Constitution of 1898 and of 1913) declares that the jury alone has jurisdiction “of the facts on the question of guilt or innocence.” And the last paragraph of section 10 of article 7 of the Constitution (which was article 85 of the Constitution of 1898 and of 1913) declares
 
 *1003
 
 that the jurisdiction of the Supreme Court shall “extend to criminal cases on questions of law alone.”
 

 It is said on page 81 of the majority opinion in this case:
 

 “The uniform jurisprudence in this state is to the effect that evidence of previous threats or of the dangerous character of the deceased, on the trial of a prosecution for murder, is not admissible until an overt act or hostile demonstration has been proved to the satisfaction of the trial judge. [Citing six decisions.]”
 

 I concede that there are some such decisions in our jurisprudence, hut it is not “the uniform jurisprudence” by a long way, for there are a great many decisions to the contrary, especially the following, which have never been declared overruled, viz: State v. Cooper, 32 La. Ann. 1085; State v. Ricks, 32 La. Ann. 1100; State v. McNeely, 34 La. Ann. 1022; State v. Williams, 40 La. Ann. 168, 3 So. 629; State v. Cancienne, 50 La. Ann. 847, 24 So. 134; State v. Robinson, 52 La. Ann. 616, 27 So. 124; State v. Stockett, 115 La. 743, 39 So. 1000; State v. Rideau, 116 La. 245, 40 So. 691; State v. Lindsey, 122 La. 375, 47 So. 687; State v. Barksdale, 122 La. 788, 48 So. 264; State v. Pairs, 145 La. 443, 82 So. 407. In the latter case, decided as late as 1919, and not yet overruled, it was said:
 

 “The question whether the defendant or the deceased was the aggressor in the fatal difficulty is a question of fact; and, under the plea of self-defense, as in this case, it is the only question of fact upon which depends the guilt or innocence of the party accused.
 

 “By article 85 of the Constitution, the jurisdiction of this court, in criminal eases, is confined to questions of law. That does not mean .that we shall not decide questions of fact on which the trial judge has based a ruling, and which do not pertain to the question of guilt or innocence of the party accused. The Legislature has, by Act No. 113' of 1896, provided a method of bringing up for our consideration the evidence on such questions of fact; and, though that statute is now 23 years old and has 'been considered and interpreted in our decisions more than 30 times, it has never been considered violative of article 85 of the Constitution, or of article 179, which provides that the jury shall be the judges of the facts pertaining to the question of guilt or innocence, in criminal cases.
 

 “For the district judge to withhold from the jurors, and decide for them, a question of fact on which depends .the guilt or innocence of the defendant in a criminal case, is a violation of article 179 of the Constitution. And for the Supreme Court to decide such a' question is a violation of article 85 of the Constitution. Inasmuch as proof of previous threats on the pai't of the deceased is not admissible for any other purpose than to show who was the aggressor in the fatal difficulty, when that question is in doubt, it is a begging of the question to say that proof of such threats is not admissible until the defendant has proven affirmatively that the deceased was the aggressor, and •that he (defendant) acted in self-defense. The effect of such a ruling would be to deprive the defendant of the benefit of proof of- previous threats on the part of the deceased, in any and every case where self-defense is pleaded in justification of a homicide. The defendant in such case, after proving affirmatively that he i was justified under the law of self-defense, would have no need for the proof of previous threats on the part of the deceased.
 

 “Rice on Evidence (Criminal) vol. 3, p. 575, § 362, in the chapter entitled ‘Evidence of Self-Defense,’ states the doctrine thus:
 

 “ ‘Threats of violence by the deceased against the accused, though not communicated to the latter, are admissible as evidence where there is any doubt as to who began the encounter. They tend to show that it was the intention of the deceased at the time of the meeting to attack the accused, and hence tend to prove that the former brought on the conflict, and are relevant evidence. If all the evidence is to the effect that the defendant was the aggressor, it is not admissible.’
 

 “To the same effect is Wharton’s Crim. Ev. (10th Ed.) vol. 2, § 912. There being some confusion in the jurisprudence of this court, a review of the decisions on the subject would serve no useful purpose.
 

 “Our conclusion, is that the district judge was in error in. excluding the evidence of previous threats on the part of the deceased, under the circumstances of this case.”
 

 ' It is said on page 32 of the majority opinion in this ease:
 

 “The admissibility vel non of testimony tending to show previous threats, or the dangerous character of the deceased, has been repeatedly
 
 *1005
 
 held by this court to he a question of law to he decided by the trial judge, and not a question of fact affecting the guilt or innocence of the defendant, of which the jury is the exclusive judge. Const. 1921, art. 19, § 9.”
 

 What has been said in that respect, in the decisions referred to, is that evidence of previous threats or of the dangerous character of the deceased is not admissible until the defendant proves to the satisfaction of the judge that the deceased was the aggressor in the fatal difficulty, and that he, the defendant, acted in self-defense. I do not understand how it can be said that the question as to who was the aggressor in the fatal difficulty is a question of law, or that it is not a question of fact affecting the guilt or innocence of the defendant on trial for murder.
 

 To allow the trial judge to decide the question of self-defense, when the question is at issue in a prosecution for murder or manslaughter, would abolish the right of trial by jury in such cases. It is begging the question to say that the judge’s authority to decide the question of self-defense is limited to the purpose of determining whether he will allow the introduction of evidence of the dangerous character or of previous threats on .the part of the deceased; for the evidence of dangerous character or of previous threats on the part of the deceased is never admissible for any other purpose — 'and is never offered in evidence for any other purpose — than to show, as far as it may tend to show, that the deceased was the aggressor in the fatal difficulty. If the defendant has first to prove to the satisfaction of the trial judge that the deceased was the aggressor, and. that he, the defendant, acted in self-defense, before he can introduce evidence of the dangerous character or of previous threats on the part of the deceased, for the purpose of showing that the deceased was the aggressor, the defendant can never introduce such evidence except in a ease where it can sei-ve no purpose. When the defendant has proved to the satisfaction of the trial judge that the deceased was the aggressor in the fatal difficulty, and that he, the defendant, acted in self-defense, there is no use in his proving the dangerous character or previous threats on the part of the deceased, because, if. the jury should convict the defendant, the judge, being satisfied with the evidence that the deceased was the aggressor in the fatal difficulty, and that the defendant acted in self-defense, would be in duty bound to set aside the verdict and grant a new trial. Why, then, should the judge waste his time and that of the. jury listening to evidence of the dangerous character and of previous threats on the part of the deceased? All of which only demonstrates that the doctrine that the defendant in a prosecution for murder or manslaughter, invoking the law of self-defense, must first prove to the satisfaction of the judge that the deceased was the aggressor in the fatal difficulty and that he, the defendant, acted in self-defense, before he can introduce evidence of the dangerous character or of previous threats on the part of the deceased, is not only an usurpation of authority on the part of the judge, and a violation of the constitutional right to a trial by jury, but it is the most illogical doctrine ever conceived.
 

 I am not in favor of limiting the admissibility of evidence of the dangerous character or of previous threats on the part of the deceased — as suggested in the dissenting opinion of Mr. Justice ST. PAT1D — to cases where all of the eyewitnesses to the homicide have testified that the deceased was the aggressor in the fatal difficulty. It is suggested in that dissenting opinion that the trial judge should have authority to decide who was the aggressor in the fatal difficulty
 
 "when there are eyewitnesses to the hilling
 
 and a conflict of testimony between the'witnesses for the state and those for the défendant, as to who was the aggressor.” It would require a constitu
 
 *1007
 
 tional amendment to give the judge jurisdiction to decide the question of fact, as to who was the aggressor in the fatal difficulty, in a case where the testimony of the eyewitnesses for the state and those for the defendant is in conflict. The Legislature could not do it, without violating section 9 of article 19 and section 10 of article 7 of the Constitution.
 

 Referring now to the complaint of Mrs. Le Boeuf that there were no women drawn for jury service, because none had complied with the requirements of the Act 19 of 1924, I concur in the majority ruling, for the reason merely that there is nothing in the Constitution of the United States which forbids a state to prescribe the conditions under which alone women may qualify for jury service, different from the conditions under which men may qualify. The Nineteenth Amendment says nothing more than that the right of citizens of the United States
 
 to vote
 
 shall not be denied or abridged by the United States or by any state on account of
 
 sex.
 
 The Nineteenth Amendment is in exactly the same language as the Fifteenth, except that, in the Nineteenth, the word “sex” has been substituted for the words “race, color, or previous condition of servitude.” The decisions of the Supreme Court of the United States, in Strauder v. West Virginia, 100 U. S. 303, 25-L. Ed. 665, Virginia v. Rives, 100 U. S, 313, 25 L. Ed. 667, Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676, Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567, and Bush v. Kentucky, 107 U. S. 110, 1 S. Ct. 625, 27 L. Ed. 354, maintaining that the states could not deny or abridge the right of the colored race to serve on juries, were founded upon the Act of Congress of March 1, 1875 (IS Stat. at L. 336, U. S. Comp. St. § 3929 [8 USCA § 44]), which declares that no citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for jury service in the courts of the United States or in the state courts, on account of race, color, or previous condition of servitude. The act of Congress was adopted pursuant to the Fourteenth Amendment, not the Fifteenth. The Congress has not undertaken, and I doubt that it has authority, to enact any such legislation forbidding the states to discriminate between the qualifications or exemptions of men and those of women for jury service.